# PEACOCK *v.* THOMAS

No. 94–1453.   Argued November 6, 1995—Decided February 21, 1996

350

THOMAS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SCALIA, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. STEVENS, J., filed a dissenting opinion, *post*, p. 360.

*David L. Freeman* argued the cause for petitioner. With him on the briefs were *J. Theodore Gentry, Carter G. Phillips,* and *Richard D. Bernstein.*

*J. Kendall Few* argued the cause for respondent. With him on the brief were *John C. Few, Margaret A. Chamberlain,* and *James R. Gilreath.*

*Richard P. Bress* argued the cause for the United States as *Amicus Curiae* in support of respondent. With him on the brief were *Solicitor General Days, Deputy Solicitor*

General Kneedler, Thomas S. Williamson, Jr., Allen H. Feldman, Nathaniel I. Spiller, and Edward D. Sieger.*

JUSTICE THOMAS delivered the opinion of the Court.

This case presents the issue whether federal courts possess ancillary jurisdiction over new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment. We hold that they do not.

I

Respondent Jack L. Thomas is a former employee of Tru-Tech, Inc. In 1987, Thomas filed an ERISA class action in federal court against Tru-Tech and petitioner D. Grant Peacock, an officer and shareholder of Tru-Tech, for benefits due under the corporation's pension benefits plan. Thomas alleged primarily that Tru-Tech and Peacock breached their fiduciary duties to the class in administering the plan. The District Court found that Tru-Tech had breached its fiduciary duties, but ruled that Peacock was not a fiduciary. On November 28, 1988, the District Court entered judgment in the amount of $187,628.93 against Tru-Tech only. *Thomas v. Tru-Tech, Inc.,* No. 87–2243–3 (D. S. C.). On April 3, 1990, the Court of Appeals for the Fourth Circuit affirmed. Judgt. order reported at 900 F. 2d 256. Thomas did not exe-

*Robert P. Davis* and *Kenneth S. Geller* filed a brief for the National Association of Real Estate Investment Managers as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the American Association of Retired Persons et al. by *Steven S. Zaleznick, Mary Ellen Signorille, Jeffrey Lewis,* and *Ronald Dean;* for the American Federation of Labor and Congress of Industrial Organizations by *Virginia A. Seitz, David M. Silberman,* and *Laurence Gold;* for the Bricklayers & Trowel Trades International Pension Fund by *Ira R. Mitzner* and *Woody N. Peterson;* for the Central States, Southeast and Southwest Areas Health and Welfare and Pension Fund by *Thomas C. Nyhan, Terrence C. Craig,* and *James P. Condon;* and for the National Coordinating Committee for Multiemployer Plans by *Diana L. S. Peters.*

cute the judgment while the case was on appeal and, during that time, Peacock settled many of Tru-Tech's accounts with favored creditors, including himself.

After the Court of Appeals affirmed the judgment, Thomas unsuccessfully attempted to collect the judgment from Tru-Tech. Thomas then sued Peacock in federal court, claiming that Peacock had entered into a civil conspiracy to siphon assets from Tru-Tech to prevent satisfaction of the ERISA judgment.[1] Thomas also claimed that Peacock fraudulently conveyed Tru-Tech's assets in violation of South Carolina and Pennsylvania law. Thomas later amended his complaint to assert a claim for "Piercing the Corporate Veil Under ERISA and Applicable Federal Law." App. 49. The District Court ultimately agreed to pierce the corporate veil and entered judgment against Peacock in the amount of $187,628.93—the precise amount of the judgment against Tru-Tech—plus interest and fees, notwithstanding the fact that Peacock's alleged fraudulent transfers totaled no more than $80,000. The Court of Appeals affirmed, holding that the District Court properly exercised ancillary jurisdiction over Thomas' suit. 39 F. 3d 493 (CA4 1994). We granted certiorari to determine whether the District Court had subject-matter jurisdiction and to resolve a conflict among the Courts of Appeals.[2] 514 U. S. 1126 (1995). We now reverse.

## II

Thomas relies on the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 832, as amended, 29

---

[1] Peacock's attorney was also named as a defendant in the suit, but the District Court rejected the claim against him.

[2] Compare 39 F. 3d 493 (CA4 1994) (case below), *Argento* v. *Melrose Park*, 838 F. 2d 1483 (CA7 1988), *Skevofilax* v. *Quigley*, 810 F. 2d 378 (CA3) (en banc), cert. denied, 481 U. S. 1029 (1987), and *Blackburn Truck Lines, Inc.* v. *Francis*, 723 F. 2d 730 (CA9 1984), with *Sandlin* v. *Corporate Interiors Inc.*, 972 F. 2d 1212 (CA10 1992), and *Berry* v. *McLemore*, 795 F. 2d 452 (CA5 1986).

U. S. C. § 1001 *et seq.*, as the source of federal jurisdiction for this suit. The District Court did not expressly rule on subject-matter jurisdiction, but found that Thomas had properly stated a claim under ERISA for piercing the corporate veil. We disagree. We are not aware of, and Thomas does not point to, any provision of ERISA that provides for imposing liability for an extant ERISA judgment against a third party. See *Mackey* v. *Lanier Collection Agency & Service, Inc.*, 486 U. S. 825, 833 (1988) ("ERISA does not provide an enforcement mechanism for collecting judgments . . .").

We reject Thomas' suggestion, not made in the District Court, that this subsequent suit arose under § 502(a)(3) of ERISA, which authorizes civil actions for "appropriate equitable relief" to redress violations of ERISA or the terms of an ERISA plan. 29 U. S. C. § 1132(a)(3). Thomas' complaint in this lawsuit alleged no violation of ERISA or of the plan. The wrongdoing alleged in the complaint occurred in 1989 and 1990, some four to five years after Tru-Tech's ERISA plan was terminated, and Thomas did not—indeed, could not—allege that Peacock was a fiduciary to the terminated plan.[3] Thomas further concedes that Peacock's alleged wrongdoing "did not occur with respect to the administration or operation of the plan." Brief for Respondent 11. Under the circumstances, we think Thomas failed to allege a claim under § 502(a)(3) for equitable relief. Section 502(a)(3) "does not, after all, authorize 'appropriate equitable relief' *at large*, but only 'appropriate equitable relief' for the purpose of 'redress[ing any] violations or . . . enforc[ing] any provisions' of ERISA or an ERISA plan." *Mertens* v. *Hewitt Associates*, 508 U. S. 248, 253 (1993) (emphasis and modifications in original).

Moreover, Thomas' veil-piercing claim does not state a cause of action under ERISA and cannot independently sup-

---

[3] The District Court in the original ERISA suit ruled that Peacock was not a fiduciary to Tru-Tech's plan.

port federal jurisdiction. Even if ERISA permits a plaintiff to pierce the corporate veil to reach a defendant not otherwise subject to suit under ERISA, Thomas could invoke the jurisdiction of the federal courts only by independently alleging a violation of an ERISA provision or term of the plan.[4] Piercing the corporate veil is not itself an independent ERISA cause of action, "but rather is a means of imposing liability on an underlying cause of action." 1 C. Keating & G. O'Gradney, Fletcher Cyclopedia of Law of Private Corporations § 41, p. 603 (perm. ed. 1990). Because Thomas alleged no "underlying" violation of any provision of ERISA or an ERISA plan, neither ERISA's jurisdictional provision, 29 U. S. C. § 1132(e)(1), nor 28 U. S. C. § 1331 supplied the District Court with subject-matter jurisdiction over this suit.

## III

Thomas also contends that this lawsuit is ancillary to the original ERISA suit.[5] We have recognized that a federal court may exercise ancillary jurisdiction "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen* v. *Guardian Life Ins. Co.*, 511 U. S. 375, 379–380 (1994) (citations omitted). Thomas has not carried his burden of demonstrating that this suit falls within either cate-

---

[4] This case is not at all like *Anderson* v. *Abbott*, 321 U. S. 349 (1944), cited by Thomas' *amici*, in which the receiver of a federal bank, having obtained a judgment against the bank, then sued the bank's shareholders to hold them liable for the judgment. In *Anderson*, federal jurisdiction was founded upon a federal law, 12 U. S. C. §§ 63, 64 (repealed), which specifically made shareholders of an undercapitalized federal bank liable up to the par value of their stock, regardless of the amount actually invested.

[5] Congress codified much of the common-law doctrine of ancillary jurisdiction as part of "supplemental jurisdiction" in 28 U. S. C. § 1367.

gory. See *id.*, at 377 (burden rests on party asserting jurisdiction).

### A

"[A]ncillary jurisdiction typically involves claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court." *Owen Equipment & Erection Co.* v. *Kroger,* 437 U. S. 365, 376 (1978). Ancillary jurisdiction may extend to claims having a factual and logical dependence on "the primary lawsuit," *ibid.*, but that primary lawsuit must contain an independent basis for federal jurisdiction. The court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims. See *Mine Workers* v. *Gibbs,* 383 U. S. 715, 725 (1966). In a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction. See *Kokkonen, supra,* at 380–381; *H. C. Cook Co.* v. *Beecher,* 217 U. S. 497, 498–499 (1910). Consequently, claims alleged to be factually interdependent with and, hence, ancillary to claims brought in an earlier federal lawsuit will not support federal jurisdiction over a subsequent lawsuit. The basis of the doctrine of ancillary jurisdiction is the practical need "to protect legal rights or effectively to resolve an entire, logically entwined lawsuit." *Kroger,* 437 U. S., at 377. But once judgment was entered in the original ERISA suit, the ability to resolve simultaneously factually intertwined issues vanished. As in *Kroger,* "neither the convenience of litigants nor considerations of judicial economy" can justify the extension of ancillary jurisdiction over Thomas' claims in this subsequent proceeding. *Ibid.*

In any event, there is insufficient factual dependence between the claims raised in Thomas' first and second suits to justify the extension of ancillary jurisdiction. Thomas'

factual allegations in this suit are independent from those asserted in the ERISA suit, which involved Peacock's and Tru-Tech's status as plan fiduciaries and their alleged wrongdoing in the administration of the plan. The facts relevant to this complaint are limited to allegations that Peacock shielded Tru-Tech's assets from the ERISA judgment long after Tru-Tech's plan had been terminated. The claims in these cases have little or no factual or logical interdependence, and, under these circumstances, no greater efficiencies would be created by the exercise of federal jurisdiction over them. See *Kokkonen, supra,* at 380.

B

The focus of Thomas' argument is that his suit to extend liability for payment of the ERISA judgment from Tru-Tech to Peacock fell under the District Court's ancillary enforcement jurisdiction. We have reserved the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments. Without jurisdiction to enforce a judgment entered by a federal court, "the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *Riggs* v. *Johnson County,* 6 Wall. 166, 187 (1868). In defining that power, we have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments— including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances. See, *e. g.,* *Mackey* v. *Lanier Collection Agency & Service, Inc.,* 486 U. S., at 834, n. 10 (garnishment); *Swift & Co. Packers* v. *Compania Colombiana Del Caribe, S. A.,* 339 U. S. 684, 690–692 (1950) (prejudgment attachment of property); *Dewey* v. *West Fairmont Gas Coal Co.,* 123 U. S. 329, 332–333 (1887) (prejudgment voidance of fraudulent transfers); *Labette County Comm'rs* v. *United States ex rel. Moulton,* 112 U. S.

217, 221–225 (1884) (mandamus to compel public officials in their official capacity to levy tax to enforce judgment against township); *Krippendorf* v. *Hyde*, 110 U. S. 276, 282–285 (1884) (prejudgment dispute over attached property); *Riggs, supra,* at 187–188 (mandamus to compel public officials in their official capacity to levy tax to enforce judgment against county).[6]

Our recognition of these supplementary proceedings has not, however, extended beyond attempts to execute, or to guarantee eventual executability of, a federal judgment. We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment. Indeed, we rejected an attempt to do so in *H. C. Cook Co.* v. *Beecher,* 217 U. S. 497 (1910). In *Beecher,* the plaintiff obtained a judgment in federal court against a corporation that had infringed its patent. When the plaintiff could not collect on the judgment, it sued the individual directors of the defendant corporation, alleging that, during the pendency of the original suit, they had au-

---

[6] The United States, as *amicus curiae* for Thomas, suggests that the proceeding below was jurisdictionally indistinguishable from *Swift & Co. Packers* v. *Compania Colombiana Del Caribe, S. A.,* 339 U. S. 684 (1950), *Dewey* v. *West Fairmont Gas Coal Co.,* 123 U. S. 329 (1887), *Labette County Comm'rs* v. *United States ex rel. Moulton,* 112 U. S. 217 (1884), and *Riggs* v. *Johnson County,* 6 Wall. 166 (1868), because it was intended merely as a supplemental bill to preserve and force payment of the ERISA judgment by voiding fraudulent transfers of Tru-Tech's assets. Brief for United States as *Amicus Curiae* 9–18. We decline to address this argument, because, even if Thomas could have sought to force payment by mandamus or to void postjudgment transfers, neither Thomas nor the courts below characterized this suit that way. Indeed, Thomas expressly rejects that characterization of his lawsuit. Brief for Respondent 4 ("This action . . . is not one to *collect* a judgment, but one to *establish liability* on the part of the Petitioner") (emphasis in original); see *id.,* at 11. In any event, the United States agrees that the alleged fraudulent transfers totaled no more than $80,000, far less than the judgment actually imposed on Peacock. Brief for United States as *Amicus Curiae* 3.

thorized continuing sales of the infringing product and knowingly permitted the corporation to become insolvent. We agreed with the Circuit Court's characterization of the suit as "an attempt to make the defendants answerable for the judgment already obtained" and affirmed the court's decision that the suit was not "ancillary to the judgment in the former suit." *Id.*, at 498–499. *Beecher* governs this case and persuades us that Thomas' attempt to make Peacock answerable for the ERISA judgment is not ancillary to that judgment.

*Labette County Comm'rs* and *Riggs* are not to the contrary. In those cases, we permitted a judgment creditor to mandamus county officials to force them to levy a tax for payment of an existing judgment. *Labette County Comm'rs, supra,* at 221–225; *Riggs, supra,* at 187–188. The order in each case merely required compliance with the existing judgment by the persons with authority to comply. We did not authorize the shifting of liability for payment of the judgment from the judgment debtor to the county officials, as Thomas attempts to do here.

In determining the reach of the federal courts' ancillary jurisdiction, we have cautioned against the exercise of jurisdiction over proceedings that are "'entirely new and original,'" *Krippendorf* v. *Hyde, supra,* at 285 (quoting *Minnesota Co.* v. *St. Paul Co.,* 2 Wall. 609, 633 (1865)), or where "the relief [sought is] of a different kind or on a different principle" than that of the prior decree. *Dugas* v. *American Surety Co.,* 300 U. S. 414, 428 (1937). These principles suggest that ancillary jurisdiction could not properly be exercised in this case. This action is founded not only upon different facts than the ERISA suit, but also upon entirely new theories of liability. In this suit, Thomas alleged civil conspiracy and fraudulent transfer of Tru-Tech's assets, but, as we have noted, no substantive ERISA violation. The alleged wrongdoing in this case occurred after the ERISA judgment was entered, and Thomas' claims—civil conspiracy, fraudulent conveyance, and "veil piercing"—all involved new

theories of liability not asserted in the ERISA suit. Other than the existence of the ERISA judgment itself, this suit has little connection to the ERISA case. This is a new action based on theories of relief that did not exist, and could not have existed, at the time the court entered judgment in the ERISA case.

Ancillary enforcement jurisdiction is, at its core, a creature of necessity. See *Kokkonen*, 511 U. S., at 380; *Riggs*, 6 Wall., at 187. When a party has obtained a valid federal judgment, only extraordinary circumstances, if any, can justify ancillary jurisdiction over a subsequent suit like this. To protect and aid the collection of a federal judgment, the Federal Rules of Civil Procedure provide fast and effective mechanisms for execution.[7]  In the event a stay is entered pending appeal, the Rules require the district court to ensure that the judgment creditor's position is secured, ordinarily by a supersedeas bond.[8]  The Rules cannot guarantee payment of every federal judgment. But as long as they protect a judgment creditor's ability to execute on a judgment, the district court's authority is adequately preserved, and ancillary jurisdiction is not justified over a new lawsuit to impose liability for a judgment on a third party. Contrary to Thomas' suggestion otherwise, we think these procedural safeguards are sufficient to prevent wholesale fraud upon the district courts of the United States.

---

[7] Rule 69(a), for instance, permits judgment creditors to use any execution method consistent with the practice and procedure of the State in which the district court sits. Rule 62(a) further protects judgment creditors by permitting execution on a judgment at any time more than 10 days after the judgment is entered.

[8] The district court may only stay execution of the judgment pending the disposition of certain post-trial motions or appeal if the court provides for the security of the judgment creditor. Rule 62(b) (stay pending post-trial motions "on such conditions for the security of the adverse party as are proper"); Rule 62(d) (stay pending appeal "by giving a supersedeas bond").

## IV

For these reasons, we hold that the District Court lacked jurisdiction over Thomas' subsequent suit. Accordingly, the judgment of the Court of Appeals is

*Reversed.*

JUSTICE STEVENS, dissenting.

The conflict between the views of the judges on the Court of Appeals and the District Court, on the one hand, and those of my eight colleagues, on the other, demonstrates that this is not an easy case. I believe its outcome should be determined by a proper application of the principle, first announced by Chief Justice Marshall, that a federal court's jurisdiction "is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied." *Wayman* v. *Southard*, 10 Wheat. 1, 23 (1825). In my opinion that jurisdiction encompasses a claim by a judgment creditor that a party in control of the judgment debtor has fraudulently exercised that control to defeat satisfaction of the judgment.

In substance the Court so held in *Riggs* v. *Johnson County*, 6 Wall. 166 (1868), and in *Labette County Comm'rs* v. *United States ex rel. Moulton*, 112 U. S. 217 (1884). In each of those cases a judgment against the county was unsatisfied because the county commissioners refused to levy a tax to raise the funds needed to pay the judgment, and in each this Court held that the federal court had jurisdiction to compel the commissioners to take the action necessary to enable the county to satisfy the judgment. It is true, as the Court notes today, that the "order in each case merely required compliance with the existing judgment by the persons with authority to comply." *Ante*, at 358. But the Court fails to explain why the District Court would not have had jurisdiction to enter a comparable order in this case—one that would have directed petitioner to restore to the judgment

debtor the assets that he allegedly transferred to himself to prevent satisfaction of the judgment.*

It is true that the order that was actually entered against petitioner did more than that—it ordered him to satisfy the original judgment in full, rather than merely to restore the fraudulent transfers. For that reason, I agree that the relief was excessive and should be modified. Nevertheless, the Court's central holding that the District Court had no power to grant any relief against petitioner is inconsistent with *Riggs* and *Labette*.

I am also persuaded that the Court's reliance on *H. C. Cook Co.* v. *Beecher*, 217 U. S. 497 (1910), is misplaced. The theory of the complaint against the directors of the judgment debtor in that case was that they were "joint trespassers," equally liable for the patent infringement. That theory was comparable to the claim against this petitioner that was asserted and rejected in the original ERISA action. It depended on proof that the directors' prejudgment conduct should subject them to the same liability as the judgment debtor. See *id.,*

---

*Both the Court of Appeals and the District Court acknowledged that respondent brought this action to preserve the initial Employee Retirement Income Security Act of 1974 (ERISA) judgment. See 39 F. 3d 493, 502 (CA4 1994) (describing action as "an equitable attempt to satisfy a previous judgment entered against a fiduciary"); Civ. Action No. 7:91–3843–21 (D. S. C., June 24, 1992), p. 5, App. to Pet. for Cert. 57a ("[T]he present action is an attempt to satisfy a former judgment properly rendered by the District Court"). Petitioner recognized the same. See Brief for Appellant in No. 92–2524 (CA4), p. 15 ("Plaintiff has . . . consistently characterized this lawsuit as an action for the collection of a judgment"). Although one passage in respondent's brief to this Court suggests that the suit was not a collection action, it is clear that respondent meant only to rebut the notion that the proceeding was wholly independent of the earlier suit. The remainder of the brief confirms the lower courts' understanding of the nature of the action, see Brief for Respondent 17–24, and respondent expressly stated the same at oral argument. See Tr. of Oral Arg. 26–27 (agreeing with the District Court's statement that the action before it was "an attempt to satisfy the former judgment").

at 498.  What is at issue now, however, is whether petition-er's postjudgment conduct which frustrated satisfaction of the judgment was subject to the continuing jurisdiction of the court that entered that judgment.  To that question *Beecher* does not speak.

In sum, I am persuaded that it is the reasoning in *Riggs* and *Labette,* rather than *Beecher,* that should resolve the jurisdictional issue.  Accordingly, I respectfully dissent.