**Mike YANG, Plaintiff–Appellant,**

v.

**CITY OF CHICAGO, Defendant–Appellee.**

Nos. 97–1288, 97–1418.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 12, 1998.

Decided Feb. 25, 1998.

John Y.E. Lee (argued), Oppenheimer, Wolff & Donnelly, M. Allison Despard, Littler & Mendelson, Chicago, IL, for Mike Yang.

Paul J. Hardin, Chicago, IL, for Paul J. Hardin.

David M. Zinder, Julian Henriques (argued), Office of the Corporation Counsel, Appeals Division, Chicago, IL, for City of Chicago.

Before BAUER, COFFEY, and KANNE, Circuit Judges.

BAUER, Circuit Judge.

This case began in 1991 when Mike Yang's south side shoe store was robbed. Two Chicago police officers responded to the call, but rather than help Yang, they violated his civil rights by committing numerous felonies against him. On this, his second, appeal to this court, Yang seeks to enforce a § 1983 judgment against both officers. *See Yang v. Hardin*, 37 F.3d 282 (7th Cir.1994) (reversing district court's finding that Officer Hardin was not liable for § 1983 and state common law claims). Yang seeks to enforce his $229,-658.10 judgment against the officers through a supplemental collection proceeding under Federal Rule of Civil Procedure 69(a) to have the City indemnify his § 1983 judgment in accordance with 745 ILCS 10/9–102. The district court dismissed Yang's garnishment proceeding for lack of jurisdiction. We reverse.

BACKGROUND

A. *Facts*

The following facts are taken from the factual background section of our first opinion in this case.

On January 8, 1991, at approximately 11:00 p.m., Mike Yang, co-owner of a south-side shoe store, received a call from his alarm company notifying him that the store had been burglarized. Yang called his brother, Myung and an employee, Bob. The defendants, uniformed police officers employed by the Chicago Police Department, had already arrived at the store when Yang got there. While Yang and his employee and brother busied themselves with repairing the shattered front display window, Officer Hardin prepared a police report by the front door of the store, adjacent to the broken window. Officer Brown entered the store to investigate. While inside the store looking for a board to repair the window, employee Bob noticed that Officer Brown was perusing the store in the manner of a shoplifter. Bob alerted Yang to this. As Officers Brown and Hardin began to leave, Yang noticed a bulge in Officer Brown's jacket. Believing that Officer Brown had stolen some merchandise, Yang approached the officer and requested that the merchandise be returned. At first, Officer Brown denied that he had taken any merchandise. But after a discussion that escalated into an argument, Officer Brown reached into his jacket and pulled out a pair of "L.A. Raider" shorts and threw them at Yang. Officers Brown and Hardin then proceeded to enter their police car and drive away. When Yang followed, Officer Brown shoved Yang. Throughout the confrontation, Officer Hardin stood by the passenger door of the squad car. He did not speak or intervene in any manner despite Yang's repeated requests for Officer Hardin to call the police sergeant.

In an attempt to prevent Officer Brown from leaving, Yang held onto the driver's side door of the squad car to keep it open so that Officer Brown could not drive off. However, Officer Brown drove anyway, with the driver's side door ajar and Yang hanging onto the car. Officer Brown drove fast and recklessly in a zigzagging pattern, braking and accelerating, in an attempt to throw Yang off. Officer Brown also repeatedly struck Yang in the ribs with his elbow. Yang asserts that he was unable to let go of the car without being run over. Throughout the drive, Officer Hardin sat in the passenger seat. Officer Hardin did not say anything or in any way attempt to intervene. The squad car traveled, with Yang hanging on more than two full city blocks until two men on the sidewalk saw what was happening and ran out to the street to stop the police car. Yang let go when the car stopped. Officer Brown then got out of the car and punched Yang in the face, knocking him to the ground. Meanwhile, Yang's brother, who had run after the squad car, arrived at the scene. Officer Brown knocked Myung Yang to the ground.

Throughout these events, Officer Hardin did not call the sergeant or attempt to stop Officer Brown in any way. However, as the Yang brothers lay in the street, Officer Hardin got out of the passenger seat of the squad car, drew his gun, pointed it at the brothers and shouted obscenities at them. The Yangs froze. Officers Hardin and Brown got back in the police car and drove away.

*Yang v. Hardin*, 37 F.3d 282, 283–84 (7th Cir.1994) (Bauer, J.).

B. *Proceedings Below*

In January 1992, Mike Yang sued Officers Brown and Hardin, as well as the City of Chicago, for violations of 42 U.S.C. § 1983 and various state common law claims. Both officers defaulted, and the City was dismissed from the action pursuant to *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The district court found against Officer Brown in the amount of $229,658.10 ($50,000 of which were punitive damages) and dismissed the claims against Officer Hardin. We reversed the district court's decision as to Officer Hardin, finding that Hardin was acting within the scope of his employment for purposes of

§ 1983 and that he violated Yang's civil rights. *See Yang,* 37 F.3d at 286.

On remand, on February 14, 1995, the district court entered judgment against Hardin in the amount of $185,658.10 for compensatory damages. On May 3, 1995, Yang filed a petition for indemnification and writ of execution, seeking indemnification of the Brown and Hardin judgments (but not both) from the City of Chicago pursuant to 745 ILCS 10*9–102. Section 9–102 directs a municipality to indemnify a tort judgment entered against an employee if the employee's misconduct was within the scope of his employment.

One year later, on May 3, 1996, the district court still had not ruled on Yang's petition for indemnification. On that date, Yang filed a request for status with the clerk of the court under Local Rule 12(Q). When he still had not heard an answer regarding his petition for indemnification on July 12, 1996, Yang filed a second request for status under Local Rule 12(Q). On August 2, 1996, Yang filed yet another request for status, this time on his petition for attorney's fees, which he had filed and was pending for over seven months without a decision.

On August 1, 1996, some fifteen months after Yang filed his petition for indemnification, the district court issued an order and an opinion, granting Yang's petition for indemnification as to the Hardin judgment, but denying it as to the Brown judgment. Yang subsequently filed an update of his fee petition.

On August 15, 1996, the City filed a motion to reconsider the district court's decision in favor of Yang's petition for indemnification. The court held a hearing on the City's motion on September 4, 1996, and, over Yang's objection, reopened discovery on the scope of employment issue and granted the City leave to file an additional brief in support of its motion to reconsider. The district court also ordered the City to file a response to Yang's fee petition.

The City never conducted any discovery on the scope of employment issue, nor did it file a brief in support of its motion to reconsider, nor file a response to Yang's fee petition.

However, at the next hearing before the court, on October 22, 1996, the City did file a motion to dismiss Yang's petition for indemnification, which the court had already granted, for lack of subject matter jurisdiction in light of the Supreme Court's decision in *Peacock v. Thomas,* 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996). Although the *Peacock* decision had been released in February of 1996, some eight months before the City filed its motion to dismiss, the district court ordered briefing on the City's motion and set a ruling date.

On January 15, 1997, the district court ruled that it lacked subject matter jurisdiction over Yang's petition for indemnification and vacated its previous order granting the petition. The court also denied Yang's fee petition against Hardin, *sua sponte* and over Yang's objection. Judge Grady's sole explanation for denying the fee petition was to avoid getting "charged ... for reporting purposes" with sitting on the petition for almost two years. On January 17, 1997, the district court entered orders dismissing Yang's § 9–102 petition for indemnification for lack of subject matter jurisdiction, vacating its judgment granting Yang's petition for indemnification, and denying Yang's fee petitions. Yang filed timely notice of appeal on February 6, 1997.

On appeal, Yang argues that the district erred in dismissing his petition for indemnification for want of jurisdiction. He argues that his § 9–102 petition was an ancillary proceeding, not a separate lawsuit, and was properly before the court. Yang also seeks review of the court's dismissal of his fee petition.

### ANALYSIS

#### A. *Subject Matter Jurisdiction*

Yang argues that the district court erred in dismissing his Rule 69 garnishment petition. He asserts that the garnishment proceeding was not a separate lawsuit, as the district court held, but an ancillary proceeding of the same suit. We agree.

We have held that garnishment proceedings to collect a judgment are not separate lawsuits. *See, e.g., Matos v. Richard A. Nel-*

*lis, Inc.*, 101 F.3d 1193 (7th Cir.1996) (Rule 69 garnishment proceeding is an ancillary proceeding and district court therefore was within its jurisdiction in allowing plaintiff to collect her judgment from a third party); *Citizens Elec. Corp. v. Bituminous Fire & Marine Ins. Co.*, 68 F.3d 1016, 1020 (7th Cir.1995) ("In federal practice, garnishment to collect a judgment is not—at least, need not be-an independent suit. It is part of the main action, prosecuted under Fed.R.Civ.P. 69 by virtue of the supplemental jurisdiction."); *Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir.1995) ("Garnishment is a standard, and often essential, step in the collection of a judgment, and the party holding the judgment ... ought to be able to take this step without having to start a new lawsuit in a different court system."); *Argento v. Village of Melrose Park*, 838 F.2d 1483 (7th Cir.1988) (finding garnishment proceeding to collect judgment from a § 1983 suit within court's ancillary jurisdiction).

We addressed this very question in *Argento v. Village of Melrose Park*. In *Argento*, a man arrested for a traffic accident was severely beaten while in police custody. 838 F.2d at 1486. He filed suit against the four officers who beat him, as well as against the Village of Melrose Park, alleging violations of 42 U.S.C. §§ 1983 and 1985. A jury found the officers not liable under § 1983 for the beating, and we reversed. *Id.* Liability was assessed on remand, but the plaintiff was unable to collect his judgment. He sued the Village to collect the judgment, utilizing Federal Rule of Civil Procedure 69(a) to collect in accordance with 745 ILCS 10*9–102. The Village argued that the district court's jurisdiction did not extend to separate actions against nonparties to the original suit. *Id.* at 1487. We disagreed, finding that the district court had jurisdiction by virtue of its supplemental authority to order a third party not subject to the first suit (the Village) to pay the judgment in the § 1983 suit. *Id.* at 1495. In particular, we found that "the 9–102 claim against the Village ... [is] adequately relat-

ed to the initial civil rights action to fall under ancillary jurisdiction." *Id.* at 1490.

The City argues that the rule established in *Argento* and developed through its progeny of case law was overruled by the Supreme Court's opinion in *Peacock v. Thomas*, 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996).[1] In *Peacock*, the Court held that federal courts do not possess ancillary jurisdiction over new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment. 516 U.S. at 349–50, 116 S.Ct. at 864. However, the Supreme Court specifically cited Rule 69 as a procedure under ancillary jurisdiction to be used in executing federal judgments in accordance with state procedure and practice. *Id.* at 359 n. 7, 116 S.Ct. at 869 n. 7. Additionally, the Court noted that:

> We have reserved the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments. Without jurisdiction to enforce a judgment entered by a federal court, "the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *Riggs v. Johnson County*, 6 Wall. 166, 18 L.Ed. 768 (1868). In defining that power, we have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances. *See, e.g., Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 834 n. 10[108 S.Ct. 2182, 2188 n. 10, 100 L.Ed.2d 836] (1988) (garnishment) ....

*Peacock*, 516 U.S. at 356, 116 S.Ct. at 868. *See also Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir.1995) (predicting that the Supreme Court would not hold garnishment proceedings to be outside supplemental jurisdiction).

---

1. The City also argues that Yang's Rule 69 garnishment proceeding is a separate lawsuit because there really isn't a garnishment at issue here since the City is not holding any funds belonging to Hardin and has no obligation under § 9–102 to pay either Brown or Hardin any amount. We find this argument to be irrelevant, given our findings below that the City does have an obligation to pay Yang's judgment under § 9–102.

The City's argument that *Argento* does not survive *Peacock* rests on footnote 2 of the Court's opinion, where the Court implied that the *Argento* line of cases were on the wrong side of a circuit split. The City unsuccessfully argued this same point to us in *Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997).

■ In *Wilson*, the plaintiff brought suit under 42 U.S.C. § 1983 against a Chicago police officer and the City of Chicago, claiming his civil rights were violated when the officer used torture to extract a confession from him. *Id.* at 683. A jury exonerated both defendants, but we reversed as to the officer, and affirmed as to the City. *See* 6 F.3d 1233 (1993). The plaintiff attempted to collect his judgment from the City, pursuant to 745 ILCS 10*9–102. The City argued that there was no federal jurisdiction over plaintiff's claim. *Wilson*, 120 F.3d at 683. We disagreed with the City, and found that "the *Argento* line of cases survives when the plaintiff is proceeding in his original suit rather than by means of a new suit." *Id.* at 685. We therefore reiterate the law of this circuit that a Rule 69 garnishment proceeding to collect a judgment from a third person not party to the original suit is within a court's ancillary jurisdiction, providing "the additional proceeding does not inject so many new issues that it is functionally a separate case." *Id.* at 684.

There is no question here that Yang's Rule 69 petition is not a new suit. As in *Wilson* and *Argento*, the only new issue raised in Yang's second suit is whether Hardin was acting within the scope of his employment when he pulled his gun on Yang. *See Wilson*, 120 F.3d at 684; *Argento*, 838 F.2d at 1493. Yang proceeded against the City under 745 ILCS 10*9–102, an Illinois statute for indemnification that by its terms is applicable only if the employee was acting within the scope of his employment. The City argues that the statute does not apply because Officer Hardin was not acting within the scope of his employment. Even assuming arguendo that Hardin was acting within the scope of his employment, the City maintains that it is exempt from § 9–102 by virtue of the "home rule" provision in the Illinois constitution. The City raised, and we dismissed, these very arguments in *Wilson*.

■ When addressing the City's scope of employment argument in *Wilson*, we stated that "[t]his is not a case in which a police officer, while engaged on police business, commits a wrong designed to advance his purely private interests...." *Wilson*, 120 F.3d at 685. To the contrary, Hardin was on duty, wearing a Chicago police uniform, driving a marked squad car, and investigating a crime when the incident occurred. *See Yang*, 37 F.3d at 284. He failed to intervene when he had a duty to do so.[2] *Id.* In many circumstances it is entirely appropriate for an officer to pull a gun on an individual. Not here. *See also Argento*, 838 F.2d at 1494–95 (finding that a post-arrest beating was within the scope of the officer's employment under § 9–102). Hardin was clearly acting within the scope of his employment when he pulled his gun on Yang.

We similarly reject the City's argument that a city ordinance exempts it from § 9–102 by virtue of the "home rule" provision in the Illinois constitution. "The ordinance, which furnished the basis for [Yang's] impleading the City, provides that when a judgment is rendered against a police officer for personal injury or property damage resulting from the performance of his duty as an officer, the City's corporation counsel 'shall certify such judgment to the city comptroller for payment by the city, when, in his opinion, such member of the police department has not been guilty of wilful misconduct,' Chi. Munic. Code § 2'020(d)." *Wilson*, 120 F.3d at 685–86. As we explained in *Wilson*, "it is irrelevant whether the ordinance is within the City's home rule power" because "[r]ead in the light of the statute, the ordinance merely establishes the procedure for complying with the statute.... [The City] must pay the victim, and then seek what relief it can against the employee who is responsible for the City's having to pay the victim of the

---

**2.** We note that many of the facts necessary to find that Hardin was acting under color of law are closely related to those necessary to find he was acting within the scope of his employment. *See Wilson*, 120 F.3d at 684.

employee's tort." *Id.* at 686. Accordingly, we reverse the decision of the district court and find that Yang's garnishment proceeding was properly within the court's ancillary jurisdiction and that the City is derivatively liable for the judgment against Officer Hardin.

### B. *Fee Petition*

Judge Grady waited almost two years before ruling on Yang's fee petition, and then dismissed it without a single reference to its merits. On remand this case shall be assigned to a different judge pursuant to Circuit Rule 36. The next judge assigned to this case should consider and enter an appropriate finding on Yang's fee petition.

### CONCLUSION

The district court was incorrect in concluding that it did not have jurisdiction over Yang's garnishment proceeding. A Rule 69 proceeding to collect a judgment is not a separate lawsuit but is within a court's ancillary jurisdiction. Accordingly, we REVERSE the decision of the district court and REMAND for findings consistent with this opinion. We invoke Circuit Rule 36 on remand, with the hope that the matter be disposed of expeditiously. Yang has waited long enough for this lawsuit to come to an end.