# United States Court of Appeals
## For the First Circuit

No. 14-1359

CARMEN D. BURGOS-YANTÍN,

Plaintiff, Appellee,

v.

MUNICIPALITY OF JUANA DÍAZ, et al.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Silvia Carreño-Coll, U.S. Magistrate Judge]

Before

Howard, Chief Judge,
Torruella and Lipez, Circuit Judges.

Jorge Martínez-Luciano, with whom Emil Rodríguez-Escudero and
Martínez-Luciano & Rodríguez-Escudero Law Office were on brief,
for appellant.
José R. Olmo-Rodríguez for appellee.
Margarita L. Mercado Echegaray, Solicitor General, and Susana
I. Peñagarícano-Brown, Assistant Solicitor General, Department of
Justice, on brief for the Commonwealth of Puerto Rico, amicus
curiae.

November 19, 2018

**Per curiam**.  This appeal arises from the district court's exercise of ancillary jurisdiction to enforce a resolution, issued by the Puerto Rico Secretary of Justice, directing the Municipality of Juana Díaz to indemnify two municipal police officers found liable under Puerto Rico tort law after a federal jury trial for using excessive force resulting in a death. The Municipality argues that the district court's order stretched federal ancillary enforcement jurisdiction beyond its proper bounds.[1]  We disagree and therefore affirm.

## I.

Appellee and other family members filed this action after the shooting death of their relative, Miguel Ángel-Burgos, at the hands of the police.  They brought federal claims under 42 U.S.C. § 1983 and negligence claims under Puerto Rico's general tort statute, P.R. Laws Ann. tit. 31, § 5141.  The complaint initially named the Municipality of Juana Díaz (the "Municipality"), its mayor, and several municipal police officers as defendants.  In 2009, however, the district court granted summary judgment on the issue of municipal liability and dismissed the Municipality from the case.  Almost a year later, the court

_____

[1] Consistent with our precedent, we use the terms "ancillary enforcement jurisdiction" and "enforcement jurisdiction" to refer to the inherent power of federal courts to exercise jurisdiction by enforcing judgments "in certain situations where jurisdiction would otherwise be lacking." Futura Dev. of P.R., Inc. v. Estado Libre Asociado de Puerto Rico, 144 F.3d 7, 9 n.1 (1st Cir. 1998).

held a jury trial for the remaining defendants. The jury rejected plaintiffs' § 1983 claims, as well as most of their tort law claims. It did, however, return a verdict for Carmen Burgos-Yantín ("Burgos-Yantín"), the decedent's mother, with respect to her negligence claims against two municipal police officers in their personal capacities. The district court entered judgment against the two officers for $25,000 and $5,000, respectively.

In December 2012, Burgos-Yantín filed a Motion for Execution of Judgment [2] asserting that the Municipality was "responsible for the payment of the Judgment" against its officers by operation of a Puerto Rico statute commonly referred to as "Law 9." See P.R. Laws Ann. tit. 32, §§ 3085-3092. Law 9 permits Commonwealth and municipal officials sued in their personal capacities for alleged civil rights violations to ask the Commonwealth to "assume the payment of any judgment" so long as they acted "in good faith." Id. § 3085. With respect to municipal officials, judgments must be "defrayed from available funds in the corresponding . . . municipality." Id. § 3092. The Puerto Rico Secretary of Justice (the "Secretary") is charged with determining whether payment is due under Law 9. Id. § 3087. Here, the parties agree that the Secretary issued a resolution in April 2011

---

[2] Pursuant to Federal Rule of Civil Procedure 69, "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise." Fed. R. Civ. P. 69(a)(1).

requiring the Municipality to pay the judgments against the individual defendants.[3]

The Municipality opposed the Motion for Execution of Judgment, arguing that the district court lacked jurisdiction to enforce the Secretary's resolution. The district court rejected this argument, holding that it had "ancillary enforcement jurisdiction" and inviting Burgos-Yantín to move for a writ of execution against the Municipality. Burgos-Yantin v. Municipality of Juana Diaz, No. 07-1146(JA), 2013 WL 435203, at *2-4 (D.P.R. Jan. 2, 2013). Burgos-Yantín subsequently filed a motion requesting "the garnishment, attach[ment], or restraining of the Municipality of Juana Diaz's assets and properties." The district court granted that motion. Burgos-Yantin v. Municipality of Juana Díaz, No. 07-1146(SCC), 2014 WL 1096016, at *3 (D.P.R. Mar. 19, 2014). The Municipality now appeals the district court's ruling.

## II.

This case turns on the district court's jurisdiction (or lack thereof) to enforce the Secretary's Law 9 resolution against the Municipality. A district court may exercise ancillary jurisdiction for two reasons: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function

---

[3] The resolution itself is not in the record.

successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."  Peacock v. Thomas, 516 U.S. 349, 354 (1996) (quoting Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 379-80 (1994)).  Here, the district court relied on the second rationale, i.e., ancillary enforcement jurisdiction.

Enforcement jurisdiction is "a creature of necessity," which grants a federal court the "inherent power to enforce its judgments."  Id. at 356, 359; see also U.S.I. Props. Corp. v. M.D. Constr. Co., 230 F.3d 489, 496 (1st Cir. 2000) ("The jurisdiction of a Court is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied." (quoting Wayman v. Southard, 23 U.S. (10 Wheat.) 1, 23 (1825) (alteration omitted))).  But the scope of ancillary enforcement jurisdiction is limited by its purpose.  Such jurisdiction does not exist "where the relief [sought is] of a different kind or on a different principle than that of the prior decree."  Peacock, 516 U.S. at 358 (internal quotation marks omitted) (alteration in original).  Likewise, ancillary enforcement jurisdiction is inapt when a party seeks "to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment."  Id. at 357.[4]

---

[4] These principles apply both when the plaintiff invokes enforcement jurisdiction in a second lawsuit, as occurred in Peacock, and in the context of supplemental proceedings brought in the original lawsuit under Federal Rule of Civil Procedure 69. See U.S.I., 230 F.3d at 500 n.10.

In this appeal, the Municipality argues that Burgos-Yantín's Motion for Execution of Judgment does not fall within the district court's ancillary enforcement jurisdiction because the motion seeks to impose a new obligation on the Municipality to pay the "existing federal judgment" against the two police officers. The Municipality also rejects the validity of the Secretary's Law 9 resolution and, consequently, the indemnification obligation it purports to impose on the Municipality. Burgos-Yantín counters that the resolution is valid and enforceable. Accordingly, she argues, her motion is an appropriate procedural mechanism for enforcing the judgment because, pursuant to the Law 9 resolution, the Secretary has determined the Municipality's obligation to indemnify the judgment rendered against the municipal officers.

## A. The Validity of the Law 9 Resolution

The Municipality argues that the Secretary's resolution is invalid because the Municipality was given no opportunity to participate in the administrative process that led to its issuance, an omission that the Supreme Court of Puerto Rico subsequently ruled improper in a different case. See Municipio de Fajardo v. Secretario de Justicia, 187 D.P.R. 245 (2012).[5] In Fajardo, the Puerto Rico Supreme Court held that in a Law 9 proceeding, the

---

[5] A certified translation of the Fajardo decision, originally submitted to the district court, is included in appellants' appendix. See App'x at pp. 138-46.

Secretary could not "unilaterally commit the funds of autonomous municipalities without even giving them the opportunity to be heard," and directed the Justice Department to "design a process that grants participation to municipalities when deciding to grant judgment payment benefits" that would have "the potential of committing municipal funds." App'x at 144. The Law 9 resolution at issue in Fajardo was voided, and "the matter was remanded to the Secretary to reassess its determination after hearing from Fajardo." Burgos-Yantín, 2014 WL 1096016, at *2.

As the district court's well-reasoned opinion explained, see id. at **2-3, the decision in Fajardo does not help the Municipality in this case. Under the administrative scheme in place at the time the Secretary issued the Law 9 resolution challenged here, the Municipality had fifteen days to seek judicial review of the Secretary's decision. See P.R. Laws Ann. tit. 32, § 3087. It did not do so.[6] Hence, "by the time the Municipality first objected to the resolution -- after the [Puerto Rico] Supreme

_____

[6] Puerto Rico's Uniform Administrative Procedure Law ("UAPL") provides for a thirty-day period for seeking judicial review of administrative decisions. See P.R. Laws Ann. tit. 3, § 2172. The Secretary's Law 9 resolutions qualify as administrative decisions. App'x at 143 (Fajardo, 187 D.P.R. at 258 n.6) (explaining that the UAPL applies to the Puerto Rico Department of Justice and thus to Law 9 adjudications). We, however, need not consider the interplay between the two deadlines because the Municipality failed to meet even the longer one. See Burgos-Yantín, 2014 WL 1096016, at *2 ("In the three years since the administrative proceedings ended and the resolution issued, the Municipality has never sought to challenge it in state court.").

Court's decision in Fajardo -- the [Law 9] resolution was already final." Burgos-Yantin, 2014 WL 1096016, at *2.

The Municipality argues that notwithstanding that Fajardo was decided in 2012, it applies to this case retroactively. We disagree. The Fajardo court had the discretion to give retroactive effect to its decision, see P.R. Laws Ann. tit. 31, § 3 annot. 1 ("The courts are the ones called to determine if a decision should be retroactively applied or not." (citing Pedro Quiles Rodríguez v. Superintendente de la Policía, 139 D.P.R. 272 (1995))), but "[n]othing in [the opinion] purported to revoke final, unchallenged resolutions previously issued." Burgos-Yantin, 2014 WL 1096016, at *2; cf. Pueblo v. Báez Cintrón, 2 P.R. Offic. Trans. 42, 50 (P.R. 1974) (stating that "[w]e do not find a grounded reason for imparting a retroactive effect to this rule"). Indeed, as the district court aptly observed, "it is worth recalling that the remedy that the Puerto Rico Supreme Court required in Fajardo was forward-looking: the creation of a new administrative scheme that would give municipalities a voice in Law 9 decisions." Burgos-Yantin, 2014 WL 1096016, at *2 (emphasis added).[7] Thus, by the time the Municipality chose to contest the Secretary's Law 9 resolution, it was final and unappealable.

---

[7] In an attempt to avoid the statutory time bar, the Municipality emphasizes that it challenged the Secretary's decision by filing an amicus brief with the Supreme Court in the Fajardo case. This argument is meritless. The Municipality's

Having concluded that the Law 9 resolution is valid, we consider whether the district court had jurisdiction to order the Municipality to make the required payment to Burgos-Yantín.

**B. The Applicability of Ancillary Enforcement Jurisdiction**

The Supreme Court in Peacock cautioned courts against exercising ancillary enforcement jurisdiction "over proceedings that are entirely new and original." 516 U.S. at 358 (internal quotation marks omitted). The plaintiff there, Thomas, had obtained a judgment on an ERISA cause of action against his former employer, Tru-Tech, Inc. After failing in his efforts to collect from the company, Thomas filed a new action in federal court seeking to impose liability on a Tru-Tech executive and shareholder, Peacock, based, inter alia, on Peacock's alleged siphoning of company funds to prevent payment to Thomas. The district court granted judgment against Peacock in "the precise amount of the [first] judgment against Tru-Tech." Id. at 352. The Court of Appeals for the Fourth Circuit affirmed, holding that the district court had properly exercised ancillary jurisdiction over Thomas's suit.

In reversing, the Supreme Court rejected Thomas's contention that his second suit fell within the federal court's

_____

expression of support for a legal argument asserted by a different municipality in a different case does not excuse its failure to preserve that argument in its own proceeding.

- 9 -

ancillary enforcement jurisdiction. Id. at 356. The Court acknowledged that it had previously "approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments -- including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent transfers." Id. In this instance, however, the Court concluded that Thomas's second suit was not a means of executing the prior judgment, but rather an impermissible attempt to shift the liability imposed in the earlier litigation from Tru-Tech to Peacock. Id. at 358. Indeed, Peacock had been named in the first suit but found not liable. Id. at 351. The Court stated that it had "never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." Id. at 357.

The Municipality maintains that the circumstances here are equivalent to those in Peacock because it, like defendant Peacock, was dismissed from the case earlier, and Burgos-Yantín is thus seeking to shift liability to a party "not already liable for that judgment." Id. The circumstances here, however, are materially different from Peacock. Most significantly, the new claims in Peacock were premised on defendant Peacock's actions after the original judgment was entered, and the plaintiff relied

on a new theory of liability -- piercing the corporate veil -- to seek the recovery from Peacock that previously had been assessed against Tru-Tech.  Id. at 353.  Here, by contrast, Burgos-Yantín is not seeking to hold the Municipality itself liable for its own or the officers' conduct.  That is, there is no claim of wrongdoing by the Municipality, nor is there any claim that the Municipality is liable for the conduct of the officers on some theory of vicarious liability.  Rather, Burgos-Yantín is attempting to collect funds that the Secretary has determined the Municipality must pay to satisfy the original judgment rendered against the officers.  In other words, Burgos-Yantín is seeking to enforce the original judgment by enforcing the Municipality's statutory obligation, pursuant to the Secretary's Law 9 resolution, to indemnify the officers.

We have previously distinguished between collecting on an original judgment and obtaining a new judgment in a separate proceeding against a new party.  In U.S.I. Properties, we noted that courts routinely have exercised jurisdiction over a "postjudgment claim [that] is simply a mode of execution designed to reach property of the judgment debtor in the hands of a third party."  230 F.3d at 496.  We observed that "federal enforcement jurisdiction is clear" when state procedural mechanisms -- "such as garnishment or attachment" -- "allow the court to reach assets of the judgment debtor in the hands of third parties in a

- 11 -

continuation of the same action." Id. The Supreme Court in Peacock also distinguished the new action challenged in that case from the "broad range of supplementary proceedings involving third parties" that courts have allowed pursuant to their ancillary enforcement jurisdiction "to assist in the protection and enforcement of federal judgments." Peacock, 516 U.S. at 356. The Court expressly identified garnishment and attachment as among the procedures that had been deemed permissible. See id.

The Municipality argues that the rationale for allowing enforcement jurisdiction over proceedings seeking garnishment or attachment of a judgment debtor's funds held by a third party does not extend to funds "owed" as a result of an indemnification arrangement. Indeed, we reserved judgment in U.S.I. Properties on essentially this scenario: whether the federal courts' enforcement jurisdiction covers proceedings against municipalities that have contractual obligations to pay judgments on behalf of impecunious police officers. 230 F.3d at 497 n.6. Although the indemnification obligation here arises by statute, rather than contract, the question of whether indemnification may be equivalent to the mechanisms previously determined to support enforcement jurisdiction is the same in either situation.

Now directly faced with that question, we conclude that Burgos-Yantín's motion to execute judgment against the Municipality, based on the Municipality's statutory obligation to

- 12 -

pay, falls within the district court's enforcement jurisdiction.[8]

In practical terms, the jurisdictional inquiry here is largely indistinguishable from that applicable to garnishment or attachment. The Municipality's obligation to pay the damages award won by Burgos-Yantín has been determined with finality under state law, and that debt is not based on the Municipality's own liability for the plaintiff's injury.[9] Moreover, this is also not a situation -- like Peacock or U.S.I. Properties -- where the plaintiff asserted a new theory of direct liability. See, e.g., id. at 500 (noting that the plaintiff's "claim is not simply one to collect a judgment already rendered but rather one to newly establish liability directly on the part of a third party").

We thus conclude that the execution of judgment sought by Burgos-Yantín bears a much stronger resemblance to the

---

[8] As we elaborate infra, we are not concluding that post-judgment proceedings based on indemnification will always fall within the court's ancillary enforcement jurisdiction. As the Seventh Circuit observed, such jurisdiction may be inappropriate where "the additional proceeding . . . inject[s] so many new issues that it is functionally a separate case." Yang v. City of Chicago, 137 F.3d 522, 526 (7th Cir. 1998) (quoting Wilson v. City of Chicago, 120 F.3d 681, 684 (7th Cir. 1997)).

[9] To be sure, garnishment and attachment are not identical to the indemnification procedure in this case. Unlike the garnishment and attachment contexts, the funds at issue here were never the municipal officers' property, and, indeed, the Municipality must itself generate those proceeds. However, this factor does not outweigh the similarities between the indemnification here and the enforcement procedures listed in Peacock that the Supreme Court viewed as within the federal courts' enforcement jurisdiction.

supplemental proceedings that the Court in Peacock identified as enforcement mechanisms than to the new action it rejected as impermissible. To reiterate our observation in U.S.I. Properties, "[f]ederal courts have drawn a distinction between postjudgment proceedings that simply present a mode of execution to collect an existing judgment and proceedings that raise an independent controversy with a new party, attempting to shift liability." 230 F.3d at 498.[10] Simply put, Burgos-Yantín is seeking to collect on a judgment from the party holding the proceeds she is owed. As such, she is properly invoking the court's ancillary enforcement jurisdiction. See Groden v. N&D Transp. Co. Inc., 866 F.3d 22, 29 (1st Cir. 2017) (explaining that in ancillary-enforcement proceedings against third parties, a judgment creditor does not seek to impose new liability for a money judgment, but attempts to secure the judgment debtor's funds via a mechanism designed for that purpose); IFC Interconsult, AG v. Safeguard Int'l Partners, LLC, 438 F.3d 298, 312 (3d Cir. 2006) (contrasting Peacock, which

---

[10] Indeed, the Supreme Court in Peacock appeared to recognize this distinction when it described two prior cases as consistent with its holding because "[i]n those cases, we permitted a judgment creditor to mandamus county officials to force them to levy a tax for payment of an existing judgment." 516 U.S. at 358. The Court went on to observe: "The order in each case merely required compliance with the existing judgment by the persons with authority to comply. We did not authorize the shifting of liability for payment of the judgment from the judgment debtor to the county officials, as Thomas attempts to do here." Id. We note that this enforcement procedure is very similar to the one we upheld in Acevedo-Garcia v. Vera-Monroig, 368 F.3d 49, 54-55 (1st Cir. 2004).

"addressed whether ancillary jurisdiction was available to find primary liability," with a prior circuit decision that "dealt with ancillary jurisdiction to seek satisfaction of a judgment from a party that is alleged to be secondarily liable based on an indemnification agreement").

The Municipality argues that, even if ancillary enforcement jurisdiction is appropriate based on an indemnification theory, it is not proper here because Law 9 makes the indemnification obligation discretionary rather than mandatory. We fail to see any significance in that distinction on the facts of this case. Before Burgos-Yantín filed her motion for execution, the Secretary had exercised his discretion under Law 9 in concluding that the Municipality must indemnify the defendant officers. As discussed above, the Municipality failed to challenge the Secretary's resolution either administratively or through appeal to the Commonwealth courts. Accordingly, at this point, the resolution is final, and it imposes a mandatory obligation on the Municipality to pay the judgment on behalf of the officers.

To be sure, in some cases, factual disputes or unresolved issues of state law may counsel against assuming ancillary enforcement jurisdiction over post-judgment proceedings based on indemnification. As noted above, see supra note 8, we acknowledge that a proceeding that involves "so many new issues that it is

functionally a separate case," may be outside the scope of a court's enforcement jurisdiction. Yang v. City of Chicago, 137 F.3d 522, 526 (7th Cir. 1998) (quoting Wilson v. City of Chicago, 120 F.3d 681, 684 (7th Cir. 1997)). Courts have expressed different views as to when the need to address state law issues forecloses such jurisdiction. In two cases cited by the Municipality, for example, the courts disagreed about whether unresolved scope-of-employment questions precluded ancillary enforcement jurisdiction over indemnification-based claims. In Yang, the Seventh Circuit held that the federal court could resolve the scope-of-employment issue. See id. at 526. The Sixth Circuit expressly disagreed with Yang, holding that a "legitimate, unresolved dispute[] concerning whether conduct occurs within the scope of employment or authority deprives a federal court of ancillary jurisdiction in a garnishment action pursuant to Peacock." Hudson v. Coleman, 347 F.3d 138, 146 (6th Cir. 2003). In the Sixth Circuit's view, jurisdiction was improper when "[t]he City's liability under the indemnification agreement" had not yet been established. Id. at 143; see also id. at 144 (noting that "substantial questions" remained concerning indemnification).[11]

---

[11] The court in Hudson also noted that the plaintiff's "newly presented indemnity principle" was premised on "hold[ing] the City individually liable under the indemnity clause for the full amount of the Officers' settlement." 347 F.3d at 144-45. The court concluded that this theory of direct liability did not fall within the supplementary proceedings allowed under Peacock: "The type of

Here, we have no unresolved questions of law or fact concerning indemnification. We have a final determination by the Secretary of Justice directing the Municipality to indemnify the two officers. Burgos-Yantín's motion simply asks the federal court to enforce her judgment by ordering the Municipality to follow the Secretary's Law 9 determination, thus properly invoking the court's ancillary enforcement jurisdiction.

## C. Order for Execution of Judgment

Having determined that the district court properly exercised jurisdiction over Burgos-Yantín's motion, we must consider whether the district court's order to enforce the judgment against the Municipality complies with Puerto Rico law. Under Federal Rule of Civil Procedure 69, state law governs "not only the parties' substantive rights [concerning execution of a judgment] but also the procedure to be followed." Whitfield v. Municipality of Fajardo, 564 F.3d 40, 43 (1st Cir. 2009). In ordering that "the judgment of $30,000 in favor of Burgos[-Yantín] be EXECUTED against the Municipality of Juana Díaz," the district court directed the appointment of a receiver for "any property garnished, attached, or restrained from the Municipality."

---

garnishment proceeding referred to in Peacock does not contemplate making the garnishee personally liable on the judgment based on some independent legal theory as [the plaintiff] seeks to do in this case." Id. at 144.

- 17 -

Burgos-Yantín, 2014 WL 1096016, at *3.[12]  Because no party addressed the issue, and we considered it important, we ordered briefing on whether property belonging to a Puerto Rico municipality may be attached.

We now conclude it is unnecessary to reach that question. As we previously have noted, Puerto Rico law provides that the funds needed by a municipality to pay a court judgment must be allocated in the municipality's budget.[13]  See Acevedo-Garcia v. Vera-Monroig, 368 F.3d 49, 54-55 (1st Cir. 2004); P.R. Laws Ann. tit. 21, § 4303(c).  In Acevedo-Garcia, we went on to determine that a court order directing that "future budgets take account of a court judgment" does not create an attachment of public funds. Id. at 56 (citing Librotex, Inc. v. P.R. Aqueducts & Sewer Auth., 138 D.P.R. 938, 942-43 (1995), for the proposition that "direct attachment of the funds of a public agency [is] impermissible, but an equitable order requiring the judgment to be included in the agency's next budget cycle [is] acceptable").  We have thus recognized that Puerto Rico law authorizes a procedure for executing a monetary judgment that does not implicate our concern about the attachment of municipal property.

---

[12] This order mirrored the plaintiff's request to the court.

[13] Law 9 also provides that if the municipality does not have enough funds to pay the judgment, the balance is paid by the Commonwealth.  See P.R. Laws Ann. tit. 32, § 3092.

Consistent with our precedent, and the law of Puerto Rico, the district court should enter an order directing the Municipality of Juana Díaz to allocate funds in its budget for the next fiscal year providing for the payment of the judgment at issue in this case.  To the extent that there are any issues concerning the timing of the preparation of the next municipal budget, or the way in which that allocation of funds to pay the judgment should be set forth in the budget, the district court should work out those details with the parties.

So ordered.  Costs to appellee.