381 A.2d 938

**KELSEY–BARBER CORPORATION**

v.

**Jeffrey T. CAMPBELL, Geraldine Campbell, Charles P. Curcio, and Philomena M. Curcio, Appellee.**

**Appeal of Raymond C. BIDDLE.**

Superior Court of Pennsylvania.

Argued Sept. 14, 1977.

Decided Dec. 28, 1977.

Terrence J. McCabe, Philadelphia, for appellant.

Joseph J. Hylan, with him Paul C. Vangrossi, Norristown, for appellees, Campbell's and Curcio's.

No appearance entered nor brief submitted for appellee, Kelsey-Barber Corp.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in setting aside a sheriff's sale of appellee's residence. We agree and, therefore, reverse the lower court's order.

The record reveals the following: On August 16, 1967, Charles and Philomena Curcio co-signed an installment sales contract to secure the purchase of an automobile by Geraldine and Jeffrey Campbell, the Curcios' daughter and son-in-law. When the Curcios and Campbells failed to pay the monthly installments in accordance with the terms of the contract, the First Pennsylvania Banking and Trust Company, the holder of the contract, filed a complaint in assumpsit for the unpaid balance and reasonable attorney's fees. On November 30, 1971, the Court of Common Pleas of Montgomery County entered a default judgment against Philomena and Charles Curcio, in the amount of $652.07. On March 28, 1972, First Pennsylvania assigned the judgment to Kelsey-Barber Corporation which, on July 6, 1973, filed a praecipe for a writ of execution against the residence of Philomena Curcio, located at 562 Gibson Avenue, Hollywood, Montgomery County, Pennsylvania.

On August 20, 1973, Appellee Philomena Curcio's attorney filed a petition to stay the sheriff's sale and open judgment. After the passage of almost two years, the lower court entered a judgment of non pros against appellee for failure to take depositions. On September 11, 1975, the lower court entered judgment against Geraldine and Jeffrey Campbell in the amount of $799.82.[1] On the same day, Kelsey-Barber filed a new praecipe for a writ of execution, and the Mont-

1. This amount represents $652.07, the amount of the original default judgment against the Curcios and $147.75 in interest accruing from October 26, 1971.

gomery County Prothonotary issued a writ of execution against the Curcios and Campbells. The writ directed the sheriff to levy upon 562 Gibson Avenue, Hollywood, Pennsylvania. On September 11, 1975, Kelsey-Barber's attorney filed an affidavit of notice of sale, representing that he had notified the Curcios and Campbells by registered mail of the time and place of the impending sale. The sheriff conducted the sale on December 17, 1975, and sold the premises to appellant for $2500. Appellant recorded the deed on April 2, 1976. On May 14, 1976, appellee, Philomena Curcio, filed a petition to set aside the sheriff's sale. In the petition, appellee represented, *inter alia*, that she never received notice of the sheriff's sale. Further, she averred that her bank notified her of the sale four months later when it refused to accept her monthly mortgage payment. Following a deposition pursuant to the petition, the lower court, on November 19, 1976, ordered that the sale be set aside. The court noted appellee's assertion that she never received personal notice of the sale. It also found no record of personal notice having been sent by Kelsey-Barber. The court concluded, therefore, that the sale was invalid. This appeal followed.[2]

Appellant contends that the notice Kelsey-Barber sent to appellee satisfied the standards of due process. More specifically, appellant asserts that the notice substantially complied with amended Rule 3129 of the Pennsylvania Rules of Civil Procedure, 42 Pa.C.S. (1975), amending Pa.R.C.P., 42 Pa.C.S. (1962) and Philadelphia Local Rule 3129 *.[3] There is great uncertainty in Pennsylvania surrounding the notice

**2.** The only appellant is the sale purchaser. Philomena Curcio is the only appellee because only she filed the petition to set aside the sheriff's sale. We note that Charles Curcio did not join in the petition to set aside the sale. Moreover, we note that Geraldine and Jeffrey Campbell have no discernible interest of record in the premises sold at the instant sheriff's sale.

**3.** Local rules of court are known as "star" rules because they are designated by an asterisk. Rule 1(A)(1) of the Philadelphia Court Rules states that local rules "are promulgated by the Board of Judges of the Court of Common Pleas in order to clarify or otherwise tailor statewide procedural rules to Philadelphia situations."

requirements applicable to sheriffs' sales of real estate. Rule 3129 contains the notice provisions governing such sales. Prior to 1975, the rule required the sheriff to post handbills in the sheriff's office and upon the property at least ten days prior to sale. The handbill was to describe "the property to be sold, its location, improvements, if any, the judgment of the court on which sale is being held, the name of the owner or reputed owner, and the time and place of the sale." [4] The sheriff was also required to publish the same information once a week for three successive weeks in a newspaper of general circulation in the county and in the legal publication, if any, designated for the publication of such notices. [5]

In *Luskey v. Steffron, Inc.,* 461 Pa. 305, 336 A.2d 298 (1975), [6] the Supreme Court held that former Rule 3129 denied the judgment debtor due process of law. The Court noted that while handbill and publication, historically, may have been sufficient notice to real estate record owners, ". . . [i]n today's urban society, the owners of real estate often live far removed from the area wherein their property is situated. To expect a record owner to visit his property periodically to check for sheriff's handbills or to read the newspaper of the district where his property is located is to accept the common law presumption that an owner of real estate visits his property every thirty days; such is not the case in today's society." *Luskey No. 1, supra* 461 Pa. at 308, 336 A.2d at 299.

4. Pa.R.C.P. No. 3129(a) stated: "Notice of the sale of real property shall be given by the sheriff by handbills posted in the sheriff's office and upon the property at least ten (10) days prior to sale, briefly describing the property to be sold, its location, the improvements, if any, the judgment of the court on which sale is being held, the name of the owner or reputed owner and the time and place of sale."

5. Pa.R.C.P. No. 3129(b) stated: "Notice as provided in Subdivision (a) shall also be given by publication by the sheriff once a week for three (3) successive weeks in a newspaper of general circulation in the county and in the legal publication, if any, designated by rule of court for publication of notices, the first publication to be made not less than twenty-one (21) days before the date of sale."

6. Hereinafter referred to as *Luskey No. 1.*

The Supreme Court granted reargument in the *Luskey* case for the purpose of determining its effective date. In *Luskey v. Steffron, Inc.,* 469 Pa. 377, 380, 366 A.2d 223, 224 (1976), the Court held that ". . . as of April 17, 1975, the date of *Luskey No. 1,* notice was given to municipalities, courts and the legal profession that notice by publication in sheriff's sales was no longer constitutional. Therefore, we are of the opinion that *Luskey No. 1* is applicable to all sheriff's sales initiated after April 17, 1975."

In response to *Luskey No. 1,* the Supreme Court directed the promulgation of amended Rule 3129.[7] While the amend-

7. Amended Rule 3129 provides:

"(a) No writ of execution to sell real property shall issue upon a judgment until the plaintiff or some person on his behalf has filed of record with the prothonotary an affidavit setting forth to the best of his knowledge, information and belief the name and last known address of the owner or reputed owner and of the defendant in the judgment. A copy of the affidavit shall be delivered to the sheriff together with the writ of execution. If after a good faith investigation the name of the owner or reputed owner or his address or the whereabouts of the defendant in the judgment cannot be ascertained, the affidavit shall so state.

"(b) Notice of the sale of real property shall be given by handbills, by written notice to the defendant in the judgment and the owner or reputed owner and by publication, as hereinafter provided.

"*Note*: Where real estate subject to Federal liens is sold in execution under a judgment by confession, see the provisions of the Federal Tax Lien Act of 1966 adding sec. 7425(c) to the Internal Revenue Code, 26 U.S.C.A. § 7425(c), providing for notice to the United States.

"For special rules requiring notice by the plaintiff to defendants on judgments by confession entered before December 1, 1973, see Rule 2958.

"As to judgments entered after December 1, 1973, see Rule 236 requiring notice of entry by the prothonotary.

"(1) The handbills shall be posted by the sheriff in his office and upon the property at least twenty (20) days before the sale, briefly describing the property to be sold, its location, the improvements, if any, the judgment of the court on which the sale is being held, the name of the owner or reputed owner, and the time and place of sale. The handbill shall also include the notice of a schedule of distribution required by subdivision (c) of this rule.

"(2) The written notice shall be prepared by the plaintiff and shall contain the same information as the handbills and shall be served by the sheriff at least twenty (20) days before the sale on the defendant in the judgment if his whereabouts are known and on the owner or

ed rule does not make significant changes in the procedures to be followed in sending notice by handbill or publication, it does add a third requirement of written notice. This notice, which is to be prepared by the judgment creditor, is to contain the same information included in the handbills. *See*

reputed owner if his name and address are known and on no other person, either

"(a) in the manner provided for the service of a writ of summons in assumpsit, or

"(b) by registered mail, return receipt requested, addressed to each one at his last known address set forth in the affidavit as the plaintiff may direct at the time he delivers the written notice to the sheriff for service or, if the plaintiff fails to direct, as the sheriff may elect.

"*Note*: Registered mail includes certified mail. See Definition Rule 76.

"(3) If the written notice is served by registered mail, service is complete when the letter is mailed, and if for any reason the letter is not delivered or claimed or if delivery is refused or if the return receipt is not executed or if the sheriff fails to receive any information from the post office respecting the letter before the date fixed for the sale, the validity of the service shall not be impaired and the sale shall proceed at the time fixed in the notice. All information or material received by the sheriff from the post office respecting the letter, whether before or after the sale, shall be filed of record.

"(4) Notice containing the information required by subdivision (b)(1) shall also be given by publication by the sheriff once a week for three (3) successive weeks in a newspaper of general circulation in the county and in the legal publication, if any, designated by rule of court for publication of notices, the first publication to be made not less than twenty-one (21) days before the date of sale.

"*Note*: See Note to Rule 3128 as to time, terms and conditions of sale. See also Rule 3131 as to advertisement where a parcel of real property extends across county lines.

"(c) The notice of sale provided in subdivision[s (a) and] (b) shall include a notice directed to all parties in interest and claimants that a schedule of distribution will be filed by the sheriff on a date specified by the sheriff not later than thirty (30) days after sale and that distribution will be made in accordance with the schedule unless exceptions are filed thereto within ten (10) days thereafter. No further notice of the filing of the schedule of distribution need be given.

"(d) If the sale is stayed or continued or adjourned generally, new notice shall be given as provided by subdivisions [a,] (b) and (c). If the sale is continued or adjourned at the direction of the plaintiff to a date certain within forty-five (45) days, and public announcement of the adjournment and new date is made to the bidders assembled at the time and place originally fixed for the sale, no new notice shall be required, but there may be only one such continuance or adjournment to a date certain without new notice.

"(e) Rescinded and effective Nov. 6, 1975."

Original Rule 3129(a); Amended Rule 3129(b)(1). The judgment creditor has the option to direct the sheriff to serve this notice on the judgment debtor either in the manner provided for service of a writ of summons in assumpsit[8] or by registered mail, return receipt requested. Regardless of the method of service, however, the written notice must be served by the sheriff. *See* Amended Rule 3129(b)(2); Explanatory Comment.

The Supreme Court applied the amended rule prospectively to all writs of execution against real estate issued after November 6, 1975. Hence, there was a hiatus between April 17, 1975, the effective date of *Luskey No. 1* and November 6, 1975, during which there was no applicable rule to determine the sufficiency of a judgment creditor's notice of an impending sheriff's sale. Because the Montgomery County Prothonotary issued the instant writ of execution on September 11, 1975, the case at bar falls in this interim period. Therefore, we must evaluate the propriety of the notice in the instant case without the assistance of a statewide or applicable local rule.[9]

There were two guidelines to which Kelsey-Barber could have conformed its notice during this seven month interim period: first, the requirements of due process and second, by analogy, the Philadelphia Local Rule 3129 *,[10] cited with approval in *Luskey No. 1.*

In *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the United States Supreme Court declared that a fundamental requirement of due process is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

**8.** See Pa.R.C.P. No. 1009.

**9.** Appellant asserts that Kelsey-Barber complied with a Montgomery County Local Rule. However, appellant does not reproduce this rule. Moreover, we have been unable to verify its existence.

**10.** The local rule is no longer effective because its enabling rule, the original subdivision (e) of Rule 3129, which provided for local option to provide personal notice was rescinded when the Supreme Court promulgated amended Rule 3129.

of the action." We have found no cases applying the broad constitutional precepts of *Mullane* to an attack on the sufficiency of notice of a sheriff's sale of real property.[11] However, as a matter of first impression, to determine whether the notice in the instant case complied with this constitutional formulation, we would have to conclude that the notice sent "was not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Mullane, supra* at 658.

The Philadelphia Local Rule 3129 * contained constructive notice provisions identical to original Rule 3129. However, the rule [12] also required the judgment creditor or some person on his behalf to give written notice by personal service or by registered or certified mail to the judgment debtor and record owners of the real property to be sold of the place, date, and hour of the intended sale and the real estate to be sold. Further, the person sending notice was required to file an affidavit with the prothonotary stating that notice had been given in accordance with the rule.

11. Although sixteen states have statutes requiring some form of personal notice to the judgment debtor, none of these statutory schemes appears to have been adopted in response to a court order declaring existing statutory standards unconstitutional. *See* 49 Temple Law Quarterly 597–8 (1976) for a compilation and citation to the relevant statutes.

12. Philadelphia Local Rule 3129 * (f)(2) provided:
"At or after the time of the issuance of any writ of execution for the sale of any real estate, the plaintiff, or some person on his behalf, shall give written notice by personal service on, or by registered or certified mail to, the defendant in the writ and to the real owner or owners of the real estate to be sold, stating the place, date, and hour of the intended sale and the real estate to be sold, which date shall be at least ten days after the giving of such notice as aforesaid, and shall, before the date of the sale, file an affidavit in the office of the prothonotary that said notice has been given in accordance with this rule, or that the plaintiff or the person making the affidavit on his behalf does not know and has not been able to ascertain the real owner or owners of said real estate or their addresses, or the names or addresses of some of them, or the whereabouts of the defendant in the writ, in which case such an affidavit shall be a compliance with this rule as to the real owner or owners whose names or addresses are unknown, or as to the defendant in the writ whose whereabouts is unknown."

The record in the instant case reveals only that Kelsey-Barber's attorney filed "an affidavit of notice of sale" in which he asserted that "a letter . . . was deposited in the United States Mail . . . which letter advised the said defendants and real owners of a sheriff's sale scheduled for November 26, 1975 at 1:00 p. m. in the Court House in the Borough of Norristown. Said letter was forwarded by certified mail, return receipt requested, to the last known address of said defendants at 562 Gibson Avenue aka 920 Gibson Ave., Hollywood, Pa." Conspicuously absent from the record is a return receipt for this letter, a clarification of the ambiguity in appellee's address, and evidence of additional notice informing appellees that the instant sale had been postponed from November 26, 1975, to December 17, 1975.[13] Further, there is no evidence in the record of any attempts by Kelsey-Barber or the sheriff to send notice to appellees by handbill or to publicize the sale in the appropriate local periodicals.

Because of the incompleteness of the record, we are unwilling to undertake an analysis of the novel question concerning the constitutional sufficiency of the notice in the instant case. Further, given the evidence in the record, we are constrained to find that Kelsey-Barber failed to comply with the Philadelphia Local Rule, the only specific guideline available at the time of the instant sale.[14]

Because we believe the lower court had an inadequate basis for reaching its conclusion, we remand this case for a

13. At a deposition pursuant to appellee's petition to set aside the sale, Kelsey-Barber's attorney questioned appellee, Philomena Curcio, about a letter from his office notifying her of the postponement of the sale from November 26, 1975, to December 17, 1975. Appellee denied receipt of this letter. A copy of this correspondence does not appear in the record.

14. We do not intend to imply, by our analogy to the Philadelphia Local Rule, that compliance with its requirements during this interim period would constitute substantial compliance with due process. We merely note that inasmuch as the Local Rule was cited with approval in *Luskey No. 1* nine months before the instant sale, Kelsey-Barber would have been well advised, at least, to present evidence on the record showing that it complied with this standard even though the rule, technically, did not comply.

clarification and completion of the record. Specifically, the lower court should make findings as to the form and date of the notice sent and the information contained therein. Further, the introduction of confirmatory evidence in the form of return receipts and copies of written notices, publications, and/or handbills, if available, should be entered into the record.

Order vacated and case remanded for proceedings consistent with this opinion.

SPAETH, J., files a concurring opinion in which CERCONE, J., joins.

VAN der VOORT, J., dissents.

SPAETH, Judge, concurring:

Judge HOFFMAN has set out the facts of this case with great accuracy and thoroughness. I summarize them very briefly for convenience here.

A creditor sent notice to a debtor (appellee) that the creditor was about to have the sheriff levy on appellee's property.[1] The creditor sent the notice "return receipt requested" but has not put the return receipt (assuming one was received) in the record. The notification occurred after the Supreme Court, in *Luskey v. Steffron, Inc.*, 461 Pa. 305, 366 A.2d 298 (1975), had invalidated, as not providing for sufficient notice, Pa.R.C.P. 3129,[2] which mandated notice by publication and by handbilling of property subject to a sheriff's sale, but before the enactment of amended Pa.R. C.P. 3129,[3] which requires personal notice to be sent, return receipt requested.

The majority opinion remands this case for completion of the record. I fully agree with that sensible disposition; but, to forestall another appeal I think we should advise the lower court what test to apply when it makes its findings.

1. The appellant here is the purchaser of the property at the sheriff's sale.

2. Majority opinion, footnotes 4 and 5.

3. Majority opinion, footnote 7.

On the merits, the question is what notice to the debtor was constitutionally required in the interstitial period when no rule was applicable. As the majority notes, the notice must, at a minimum, be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

As a point of departure, we know that handbilling and publication alone do not meet this test. *Luskey v. Steffron, supra.* Amended Rule 3129 requires personal notice in addition to handbilling and publication. I think the Rule provides a practical solution to the notice problem, but not the sole constitutional solution; for if a creditor knows that his notice *was received personally* by the debtor, I do not believe the constitution requires any further effort; its purposes are met at that point.

However, a caveat must be added: when one sends mail return receipt requested and does *not* get the return receipt, one has good reason to suspect that the notice did *not* arrive. In such a case, something more is required.

Here, if the creditor did not receive a return receipt, he could not have been at a loss for possible additional measures to take. In *Luskey v. Steffron, supra,* the Supreme Court cited with approval Philadelphia Local Rule 3129 * [4] which required, in addition to notice by mail, notice by handbilling and publication, an apparent "back-up" precaution.[5]

On remand, therefore, if the return receipt is placed in the record, and if the notice is found to have stated, reasonably in advance, the place, date and hour of the intended sale and

4. Majority opinion footnotes 10 and 12.

5. Similarly, Amended Rule 3129, cited in the majority opinion's footnote 7, is well crafted in this respect. While subsection (2)(b) requires that notice be sent return receipt requested, and subsection (3) requires that any return receipts be placed in the record, under subsection (3) the failure of the notice to arrive does not actually invalidate the sale. It is noteworthy that the Rule also requires the apparent "back-up" measures of handbilling of the property and publication.

the real estate to be sold,[6] the lower court should find that the notice was constitutionally adequate.

If no return receipt is placed in the record, however, the court must make a factual finding of whether the creditor did send notice to the debtor, as the creditor's affidavit alleges. If the court rejects the affidavit and finds that no notice was sent, it should hold the sale invalid. If the court finds that notice was sent, the court may infer from the creditor's inability to produce a return receipt that the creditor did not receive a receipt. This fact should have made the creditor suspect that the debtor had not received the notice. Under these circumstances, the creditor should have tried other notification techniques, such as handbilling and publication, which he easily could have derived from the *Luskey* court's approval of Philadelphia Local Rule 3129 *, or any measure equally calculated to meet the test of *Mullane v. Central Hanover Bank & Trust Co., supra,* when service by mail is suspected of having been ineffective. If no such measures were taken, the lower court should find that the notice was inadequate, and hold the sale invalid.

CERCONE, J., joins in this opinion.

---

6. *See* Philadelphia Local Rule 3129*, cited in the majority opinion's footnote 12.