Affirmed by published opinion. Judge SHEDD wrote the majority opinion, in which Senior Judge ALARCÓN joined. Judge GREGORY wrote a dissenting opinion.
OPINION
SHEDD, Circuit Judge:
After Robb Evans & Associates, LLC (“REA”) was appointed receiver over the *361 assets of Andris Pukke, it brought this action against Jeffrey Holibaugh to recover receivership property — specifically, payment on a promissory note. The district court granted summary judgment in favor of REA and denied Holibaugh’s post-judgment motion to set aside the judgment and dismiss. Holibaugh now appeals the summary judgment and post-judgment orders. For the following reasons, we affirm.
I.
The Federal Trade Commission (“FTC”) filed a civil enforcement action charging Ameridebt, Inc., DebtWorks, Inc., and Pukke with violations of 15 U.S.C. § 45(a) in connection with a fraudulent debt counseling scheme. The FTC and Pukke entered into a stipulation for judgment by the district court settling the FTC claims. Fed. Trade Comm’n v. Ameridebt, Inc., et al, No. PJM 03-3317 (D.Md. May 16, 2006). In its order effecting this judgment, the district court appointed REA as the equity receiver over Pukke’s assets to “maintain custody, control, and possession of all Assets, including ... all sums of money now or hereafter due or owing to the Receivership, with full power to: collect, receive, and take possession of all Assets.... ” J.A. 57.
The order authorized REA to “[bjring such legal actions based on law or equity in any state, federal, or foreign court as it deems necessary or appropriate in discharging its duties as Receiver relating to the location, marshaling, and management of Assets constituting Receivership property.” J.A. 58. Additionally, the order provided that the district court “shall retain jurisdiction of this matter for all purposes, including construction, modification, and enforcement of this Order.” J.A. 69.
One of the receivership assets is Infinity, an entity owned by Pukke that made loans to Pukke’s friends, family members, and business associates. Through a series of loans, Infinity loaned approximately $1,340,000 to Holibaugh and his business associate to capitalize a restaurant venture, and Holibaugh executed a note (“the Note”) in favor of Infinity for $1,330,116.75, representing the outstanding balance of these loans. Holibaugh defaulted, and REA filed this action in the district court as receiver to collect on the Note.
REA moved for summary judgment, arguing that there is no genuine issue of material fact in dispute and that it is entitled to judgment as a matter of law on its claim for payment on the Note. Holibaugh then filed a cross-motion for summary judgment alleging that (1) the statute of limitations barred REA’s claims and (2) based on various oral promises made by Pukke, Holibaugh was not personally liable on the Note. The district court granted REA’s motion for summary judgment, denied Holibaugh’s cross-motion for summary judgment, and awarded REA $1,435,686.04. In doing so, the court first found that the action was not barred by the statute of limitations. The court also applied the parol evidence rule and found that there is no genuine issue of material fact that Holibaugh executed the Note and is bound thereby.
Holibaugh then moved under Fed. R.Civ.P. 60(b)(4) and 12(h)(3) to set aside the judgment and dismiss for lack of subject matter jurisdiction. He argued that (1) there is no diversity of citizenship; (2) there is no federal question because REA filed this suit solely pursuant to Maryland state law; and (3) REA cannot establish a basis for supplemental jurisdiction under 28 U.S.C. § 1367 or common law ancillary jurisdiction. The court denied the motion. Holibaugh now appeals both the order granting summary judgment to REA and the order denying his post-judgment motion.
*362 II.
A.
First, we consider Holibaugh’s argument that the district court erred in denying his post-judgment motion alleging lack of subject matter jurisdiction. Specifically, he contends that the district court erroneously held that it has ancillary subject matter jurisdiction over this action based on REA’s appointment as receiver in the FTC enforcement action. We review de novo the district court’s decision finding that it had subject matter jurisdiction. New Horizon of NY, LLC v. Jacobs, 231 F.3d 143,150 (4th Cir.2000).
“Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.” Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The burden of establishing subject matter jurisdiction is on REA, the party asserting jurisdiction. Id.
The Supreme Court has held that a district court has ancillary subject matter jurisdiction over an action brought by a receiver in furtherance of its appointment where the district court had federal question jurisdiction over the original action in which it appointed the receiver. See Riehle v. Margolies, 279 U.S. 218, 223, 49 S.Ct. 310, 73 L.Ed. 669 (1929) (“The appointment of a receiver of a debtor’s property by a federal court confers upon it, regardless of citizenship and of the amount in controversy, federal jurisdiction to decide all questions incident to the preservation, collection, and distribution of the assets. It may do this either in the original suit ... or by ancillary proceedings.”) (citations omitted); Pope v. Louisville, N.A. & C. Ry. Co., 173 U.S. 573, 577, 19 S.Ct. 500, 43 L.Ed. 814 (1899) (noting that a court of appointment has ancillary subject matter jurisdiction over a suit brought by a receiver for recovery of receivership property); White v. Ewing, 159 U.S. 36, 38-39, 15 S.Ct. 1018, 40 L.Ed. 67 (1895) (holding that a court that appoints a receiver for an insolvent corporation retains jurisdiction over claims brought by the receiver against debtors of the corporation). See also Alexander v. Hillman, 75 F.2d 451, 453 (4th Cir.1935) (“[I]t is well settled that the courts of the United States have jurisdiction to entertain, either in equity or at law as may be appropriate, ancillary proceedings in aid of a receivership suit pending in a federal court, even though other elements of federal jurisdiction ... may be lacking.”). More recently, the Sixth Circuit has explained this concept:
[T]he initial suit which results in the appointment of the receiver is the primary action and ... any suit which the receiver thereafter brings in the appointment court in order to execute his duties is ancillary to the main suit. As such, the district court has ancillary subject matter jurisdiction of every such suit irrespective of diversity, amount in controversy or any other factor which would normally determine jurisdiction.
Haile v. Henderson Nat’l Bank, 657 F.2d 816, 822 (6th Cir.1981) (holding that a district court that appointed a receiver over a church had jurisdiction over the receiver’s actions against a Bank to collect receivership funds).
Here, the district court appointed REA as receiver to locate and collect the various assets of Pukke on behalf of the FTC. It specifically authorized REA to take necessary and appropriate legal action to collect receivership assets. Because REA was appointed by the district court in an action over which the district court had federal subject matter jurisdiction, and REA’s action against Holibaugh *363 is in furtherance of its duty to marshal Pukke’s assets, this action is within the district court’s ancillary jurisdiction recognized by the Supreme Court for over a century.
Notwithstanding this precedent, Holibaugh contends that when Congress enacted 28 U.S.C. § 1367 in 1990, thereby codifying the concept of supplemental jurisdiction, it eliminated common law ancillary jurisdiction as applied to this case. He further argues that REA’s action here does not qualify for supplemental jurisdiction under § 1367.
We disagree with Holibaugh’s argument. “Congress codified much of the common-law doctrine of ancillary jurisdiction as part of ‘supplemental jurisdiction’ in 28 U.S.C. § 1367.” Peacock v. Thomas, 516 U.S. 349, 356, 116 S.Ct. 862, 867 n. 5, 133 L.Ed.2d 817 (1996); see also Shanaghan v. Cahill, 58 F.3d 106, 109 n. 1 (4th Cir.1995) (“[Sjupplemental jurisdiction also incorporates the doctrine of ancillary jurisdiction.”).[1] However, it did not codify all of common law ancillary jurisdiction.
Although § 1367 governs ancillary jurisdiction over claims asserted in a case over which the district court has federal subject matter jurisdiction, it does not affect common law ancillary jurisdiction “over related proceedings that are technically separate from the initial case that invoked federal subject matter jurisdiction,” which remains governed • by case law. 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3523.2 (3d ed.2010) (emphasis in original).[2] See also United States v. Texas, 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993) (“ ‘[Cjourts may take it as a given that Congress has legislated with an expectation that [a] common law principle will apply except when a statutory purpose to the contrary is evident.’ ”) (internal citations omitted). The Supreme Court has acknowledged the continued existence of common law ancillary jurisdiction with regard to separate proceedings after Congress enacted § 1367. See Kokkonen, 511 U.S. at 379-82, 114 S.Ct. 1673 (discussing the availability of ancillary jurisdiction but declining to extend it based on the facts of that case); Peacock, 516 U.S. at 354-56, 116 S.Ct. 862 (same).[3]
*364 In short, based on controlling precedent, we hold that the district court properly exercised subject matter jurisdiction. Therefore, we affirm the denial of Holibaugh’s post-judgment motion.
B.
We next turn to Holibaugh’s argument that the district court erred in granting summary judgment. Summary judgment is appropriate “if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c). We review the district court’s order granting summary judgment de novo. Jennings v. Univ. of North Carolina, 482 F.3d 686, 694 (4th Cir.2007) (en banc).
Holibaugh contends that the district court erred in holding that the Note is a negotiable instrument and applying a six-year statute of limitations under D.C.Code § 28:3-118(a) (applicable to negotiable instruments)[4] to conclude that the action is not time-barred. Holibaugh does not dispute that the action was timely filed if the six-year statute of limitations period applies, as the Note was executed on February 4, 2003, and this action was filed on September 6, 2007. Instead, he argues that the Note is not a negotiable instrument and therefore, the action is barred by a three-year statute of limitations under D.C.Code § 12-301(7) (applicable to simple contracts).
D.C.Code § 28:3-104(a) sets forth the requirements for negotiability:
[T]he term “negotiable instrument” means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
(1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
(2) Is payable on demand or at a definite time; and
(3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money....
Holibaugh argues that the Note fails the first requirement because it is not “payable to bearer or to order.” The Note specifically provides that Holibaugh “promises unconditionally to pay to the order of Lender, (the ‘Noteholder’), the Amount Financed [defined as $1,330,116.75] with Interest payable in consecutive equal monthly installments.” J.A. 73 (emphasis added). Because the clear language of the Note makes it “payable to the order of an identified person,” D.C.Code § 28:3-109(b), it is payable to order, and Holibaugh’s challenge to the first requirement lacks merit.
Holibaugh also contends that the Note fails the third requirement because it includes an “undertaking or instruction” by the maker of a note “to do any act in addition to the payment of money.” D.C.Code § 28:3-104(a)(3). He bases his argument on the term of the Note provid *365 ing that he will be considered in default if he assumes any additional “lines of credit without the prior written consent of the Lender.” J.A. 73. However, a term that does no more than define an act of default does not encumber the Note so as to destroy its negotiability, as opposed to a term that imposes an affirmative obligation in addition to the core promise to pay. See D.C.Code § 28:3 — 104(a)(3) (prohibiting an additional obligation “to do any act” other than make payment on the Note); In re AppOnline.Com, Inc., 290 B.R. 1, 12 (Bankr.E.D.N.Y.2003) (holding that a note is negotiable despite a provision accelerating payment if the borrower sold the property or if a beneficial interest in the corporate borrower was transferred). Therefore, Holibaugh did not obligate himself to any additional “undertaking or instruction” in contravention of § 28:3-104(a)(3).[5] Because the Note constitutes a negotiable instrument, the applicable statute of limitations period is six years, and it is undisputed that REA’s lawsuit was filed within that time period.
C.
Finally, Holibaugh argues that the district court erred in granting summary judgment to REA because there is a genuine issue of material fact as to whether the parties intended that he be held personally responsible on the Note. Holibaugh contends that before he signed the Note, Pukke orally agreed that if the restaurant could not repay the loan, Pukke would not collect the debt from Holibaugh personally. He testified that it was “understood” that the restaurant was solely responsible for payment and that Pukke represented this to him before he executed the Note. However, Holibaugh acknowledged that he signed the Note as a borrower, not on behalf of the company or as a guarantor.
The district court excluded this testimony pursuant to the parol evidence rule. The parol evidence rule provides that extrinsic evidence “‘is inadmissible to vary or contradict the terms of a valid, and plain and unambiguous, written contract.’ ” Affordable Elegance Travel, Inc. v. Worldspan, L.P., 774 A.2d 320, 327 (D.C.2001) (quoting 17A Am.Jur.2d Contracts § 402 (1991)). Regardless of whether the Note is completely integrated or partially integrated as Holibaugh contends, we may not consider evidence that contradicts its plain and unambiguous terms. See Segal Wholesale, Inc. v. United Drug Serv., 933 A.2d 780, 783-84 (D.C.2007) (explaining that even where a writing is partially integrated, meaning there may be additional consistent terms not addressed therein, only evidence that is consistent with the terms in the agreement is permitted).
The plain and unambiguous terms of the Note hold Holibaugh personally liable for the full amount of the Note, as the sole borrower. Thus, Holibaugh’s testimony regarding Pukke’s oral representations contradict these unambiguous terms and is excluded pursuant to the parol evidence rule absent an exception.
Holibaugh attempts to bring this evidence within the fraud exception to the parol evidence rule based on his alleged unilateral mistake as to Pukke’s intent to enforce the Note. However, evidence of oral agreements to vary a party’s obligation under the terms of a note, such as a promise not to enforce, is not considered fraud for purposes of the fraud exception *366 to the parol evidence rule, and, consequently, such evidence is excluded. See Fr. Winkler KG v. Stoller, 839 F.2d 1002, 1005-1006 (3rd Cir.1988) (discussing case law across the country applying this principle). Therefore, the district court properly excluded this evidence, and there are no material facts in dispute to preclude summary judgment.
III.
For the foregoing reasons, we affirm the judgment of the district court.
AFFIRMED.

. Section 1367 provides, in relevant part,
[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.
(emphasis added).

. Although the dissent correctly observes that absent congressional authorization, a district court cannot exercise jurisdiction over additional claims involving new parties in an action, see Finley v. United States, 490 U.S. 545, 556, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), superseded by statute, Judicial Improvements Act of 1990, Pub.L. 101-650, 104 Stat. 5089 (codified at 28 USC § 1367); Raygor v. Regents of Univ. of Minnesota, 534 U.S. 533, 539-40, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002), in this case, we are addressing the doctrine of ancillary jurisdiction over separate proceedings.

. Subsequent to the enactment of § 1367, at least one other circuit has specifically recognized the continued existence of common law ancillary jurisdiction over an action filed by a receiver in furtherance of the powers and duties of the receiver under its appointment. See Donell v. Kowell, 533 F.3d 762, 769 (9th Cir.2008).
Although the dissent observes that the Supreme Court has refused to extend the doctrine of ancillary jurisdiction over separate proceedings to new contexts, see Kokkonen, 511 U.S. at 380-82, 114 S.Ct. 1673 (declining to extend ancillary jurisdiction to an action to enforce terms of settlement agreement); Peacock, 516 U.S. at 356-59, 116 S.Ct. 862 (declining to extend ancillary jurisdiction to an action seeking to "pierce the corporate veil” *364 in order to hold a corporate officer liable for an ERISA judgment), these cases in no way diminish the long-recognized doctrine of ancillary jurisdiction over actions brought by court-appointed equity receivers. See Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (“If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.”).

. The Note contains a choice of law clause providing that it will be governed by the laws of the District of Columbia.

. Holibaugh also argues that he is a personal guarantor under the Note, which renders the note non-negotiable. However, Holibaugh signed as the sole borrower or maker of the Note, and there is no guarantor or co-borrower. Therefore, this argument fails on its factual premise, and there is no need to discuss the legal argument involved.