PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
————————————

No. 09-1731
————————————

NATIONAL CITY MORTGAGE COMPANY,

Appellant

v.

BRIAN STEPHEN; ELAINE K. STEPHEN
————————————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-07-cv-02070)
District Judge: Honorable James M. Munley
————————————

Argued January 5, 2011

Before: AMBRO and FISHER, <u>Circuit Judges</u>
and SÁNCHEZ,[*] <u>District Judge</u>

(Opinion filed: July 22, 2011)

————————————

[*] Honorable Juan R. Sánchez, District Court Judge, Eastern District of Pennsylvania, sitting by designation.

Sherri J. Braunstein, Esquire (Argued)
Lorraine Gazzara Doyle, Esquire
Heidi R. Spivak, Esquire
Udren Law Offices
111 Woodcrest Road
Woodcrest Corporate Center, Suite 200
Cherry Hill, NJ   08003-0000

     Counsel for Appellant

Brion W. Kelley, Esquire (Argued)
400 Third Avenue, Suite 316
Kingston, PA   18704

     Counsel for Appellee

_____

OPINION  OF  THE  COURT
_____

AMBRO, <u>Circuit Judge</u>

We have the once-unusual case of a mortgage foreclosure brought in federal court based on diversity jurisdiction. The District Court granted a default judgment in favor of Plaintiff-Appellant National City Mortgage ("NCM"), and ordered that the property securing NCM's loan to the defendants, homeowners Brian and Elaine Stephen, be sold at a foreclosure sale. Following that sale, the Court granted NCM's motion to set aside the sale after NCM had failed to notify The Chase Manhattan Bank as Indenture

Trustee ("Chase"), a junior lien holder, of the impending sale, a notice required by state law. However, when Chase moved to vacate the set-aside order, the Court granted that motion, reasoning that the notice issue involved an independent question of state law and was not properly before it. We vacate and remand.

## I. Background

In May 2000, NCM loaned the Stephens $143,460 secured by a mortgage on the Stephens' residential property. About one year later, Chase, c/o Residential Funding Corporation ("RFC"),[1] recorded a second mortgage on the property with the Monroe County, Pennsylvania, Recorder of Deeds, securing the principal sum of $51,000.

We fast forward to November 2007 when, following the Stephens' default on the NCM loan, NCM brought a foreclosure action in the United States District Court for the Middle District of Pennsylvania based on diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a).[2]

---

[1] RFC was the then-servicer of the mortgage loan.

[2] Even prior to the financial crisis of 2008, mortgage foreclosures in federal courts were not unheard of. *See, e.g.*, *Land Holdings (St. Thomas) Ltd. v. Mega Holdings, Inc.*, 283 F.3d 616, 620 (3d Cir. 2002); *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097 (9th Cir. 1998); *In re Foreclosure Cases*, 521 F. Supp. 2d 650 (S.D. Ohio 2007); *Ryder v. Wash. Mut. Bank*, 501 F. Supp. 2d 311 (D. Conn. 2007); *Mellon Bank v. Pasqualis-Politi*, 800 F. Supp. 1297 (W.D. Pa. 1992). Today they are much more common due to congested state

Two months later, the District Court entered a final order of default judgment in the amount of $146,501.96 and ordered the property sold by marshal's sale to effect the judgment. NCM inadvertently failed to give notice to Chase. In March 2008, RFC, now known as GMAC-Rescap, assigned the servicing of the Chase loan to Dreambuilder Investments, LLC ("Dreambuilder").[3] No substitution of the servicer, nor its new address, was recorded with the Monroe County Recorder of Deeds. In May 2008, NCM was the successful bidder at the foreclosure sale of the Stephens' property.[4]

NCM had a problem, however. Pennsylvania Rule of Civil Procedure 3129.1 calls for the foreclosing plaintiff prior to the foreclosure sale of mortgaged real property to give notice of the sale to, among others, junior lien holders. As it had not given notice to Chase of the foreclosure sale, Chase

---

court dockets. Indeed, counsel for NCM informed us at oral argument that NCM brought the foreclosure in federal court because sheriff's sales in Monroe County were backlogged by approximately 18 months, whereas federal marshal's sales were typically held within four months of obtaining a foreclosure judgment.

[3] Except where the context requires otherwise, we refer hereafter simply to Chase and not to any entity servicing its mortgage loan to the Stephens.

[4] In foreclosure parlance, it "bid in" the property. In this case, it bid the minimum—the sale costs—thus not bidding an amount that offset a portion of the amount owed to it as reflected in the judgment.

retained its lien on the property. *Cf. RTC Mortg. Trust 1994-N-2 v. Fry*, 730 A.2d 476 (Pa. 1999) (setting aside divestiture of junior mortgage lien because notice to that lienholder was insufficient). Thus, rather than the typical outcome of NCM purchasing the property free of liens, its ownership would be subject to Chase's lien. So, on June 13, 2008, NCM, in a display of *chutzpah* to cover its own omission, brought a Motion to Divest Lien asking the District Court to divest Chase of its lien. The Court dismissed the Motion, stating that it had closed the case after granting NCM the foreclosure remedy it sought and that NCM's attempt to "have the court determine its rights vis-a-vis another party claiming an interest in the property . . . [concerned] an independent question of state law and [was] not properly before the court."

Willing to be more practical, NCM next brought a motion to set aside the marshal's sale, arguing that this would allow it to give notice to Chase of the new sale (thus giving Chase the chance to bid at that sale if it desired), and permit NCM to "realize from the land the full amount of its judgment and the purpose of the foreclosure action." The Court granted NCM's motion to set aside without writing an opinion.

The story does not end there, however. Chase—through RFC and "its assignee Dreambuilder"—then moved to vacate the set-aside order, and the Court granted that motion.[5] In doing so, it characterized NCM's set-aside

---

[5] NCM argues to us that because the assignment of the servicing of the loan to Dreambuilder was never recorded, the latter is not the lien holder of record, and therefore lacked standing to bring a motion to vacate. As a fall back to its lack-of-standing argument, NCM makes two intervention

motion as "another attempt to address problems with the title created by the plaintiff's actions in prosecuting the case," and noted that these were issues of state law in which "a federal court has no interest." It noted that it had closed the case after providing NCM the remedy it sought, and restated that determining another party's rights vis-à-vis the property "is an independent question of state law and not properly before the court."

claims: (1) the District Court erred in failing to make Chase or Chase c/o Dreambuilder seek to intervene in the foreclosure action, as they were non-parties; and (2) even had either entity sought to intervene, that effort would have failed because neither was a party-in-interest under Pennsylvania law with a recorded interest in the foreclosed property.

We disagree on all fronts. Chase is the party in interest regardless which loan servicer—RFC or Dreambuilder—handled matters as Chase's servicing agent. Moreover, NCM brought its Motion to Divest Lien against "Chase Manhattan Bank as Indenture Trustee c/o Residential Funding Corp." and "Chase Manhattan Bank as Indenture Trustee c/o Dreambuilder Investments, LLC." Chase in either form of identification was the clearly intended beneficiary of the District Court's order in its favor dismissing NCM's motion. *See Washington Hosp. v. White*, 889 F.2d 1294, 1299 (3d Cir. 1989) (Fed. R. Civ. P. 71 gives standing to non-party to enforce court order in its favor in the same manner as a party).

6

Following the District Court's denial of NCM's Federal Rule of Civil Procedure 60(b) motion for reconsideration, NCM appealed to us.[6]

## II. Discussion

### A. Abstention doctrines do not support the District Court's ruling

The District Court did not explicitly state that it was refusing to exercise its jurisdiction over NCM's motion to set aside the marshal's sale, but in vacating its set-aside order without ruling on the merits and reasoning that the issue concerned "an independent question of state law" not properly before it, the Court effectively abstained from exercising its jurisdiction. This put NCM out of court. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 713 (1996) (abstention by district court "puts litigants effectively out of court" (quotation marks omitted)). "We employ a two-step process when reviewing a district court's decision to abstain from exercising its jurisdiction," reviewing the underlying legal questions *de novo* but the court's decision to abstain for abuse of discretion. *Matusow v. Trans-Cnty. Title Agency,* 545 F.3d 241, 247 (3d Cir. 2008) (quoting *Chiropractic Am. v. Lavecchia*, 180 F.3d 99, 103 (3d Cir. 1999)).

---

[6] The District Court had jurisdiction under 28 U.S.C. § 1332(a). We have jurisdiction under 28 U.S.C. § 1291. While the appeal was pending before us, NCM filed a petition for equitable relief in the Court of Common Pleas of Monroe County asking that Court to determine the interests of Chase, RFC, and Dreambuilder in the property. The parties inform us that the state court proceedings are on hold pending the outcome of this appeal.

7

Although foreclosure actions are more common in state court, the District Court had diversity jurisdiction. *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States . . . ."). The homeowner defendants, the Stephens, resided in Pennsylvania. NCM's principal place of business is Ohio. The amount in controversy was over $140,000. While the able District Court focused on the fact that the notice issue before it involved state law, that is not dispositive. A district court with a case under its diversity jurisdiction almost always decides questions of state law, as it applies the substantive law of the state where the district court is located. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 228 (3d Cir. 2005). The question, rather, is whether the District Court's jurisdiction here extends to resolving issues that arise from an error committed during the pendency of its jurisdiction over a marshal's sale that it ordered. We conclude that it does.

A federal court has a "virtually unflagging obligation" to exercise its jurisdiction. *Matusow*, 545 F.3d at 248 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976))). It may abstain from exercising jurisdiction only when the "clearest of justifications . . . warrant[s] [it]." *Colorado River*, 424 U.S. at 819. Put another way, abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," and may be used "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important

8

countervailing interest," and not "merely because a State court could entertain it." *Id.* at 813 (quotation marks omitted); *see also Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009) (same).

Typical comity-based grounds for abstention are the following:

> *Pullman* abstention, an outgrowth of *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941), which is proper when a state court determination of a question of state law might moot or change a federal constitutional issue presented in a federal court case; *Burford* abstention, an outgrowth of *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), which is proper when questions of state law in which the state has expressed a desire to establish a coherent policy with respect to a matter of substantial public concern are presented; and *Younger* abstention, an outgrowth of *Younger v. Harris*, 401 U.S. 37 (1971), which is proper when federal jurisdiction has been invoked for the purpose of restraining certain state proceedings.

*Trent v. Dial Med., Inc.*, 33 F.3d 217, 223 n.5 (3d Cir. 1994), *superseded by statute on other grounds* (citing *Colorado River*, 424 U.S. at 814-16). The first and third exceptions do not apply here. There are no constitutional issues, and federal jurisdiction has not been invoked to halt state proceedings.

*Burford* abstention comes into play only when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance

9

transcends the result in the case then at bar," or where "the exercise of federal review of the question . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River*, 424 U.S. at 814. For example, in *Burford* federal abstention was appropriate where Texas had established an "elaborate review system for dealing with the geological complexities of oil and gas fields," and where federal review would "have had an impermissibly disruptive effect on state policy for the management of those fields." *Id.* at 815.

The District Court here was asked to apply Pennsylvania law on the equitable question of whether to set aside a foreclosure sale because of a mistake made during foreclosure proceedings. *See Kaib v. Smith*, 684 A.2d 630, 631 (Pa. Super. Ct. 1996) (decision to set aside a sheriff's sale is an equitable one and "addressed to the sound discretion of the hearing court"). "The trial court's ultimate disposition of the [set aside of a sheriff's sale] will not be disturbed upon review absent a finding of an abuse of discretion." *M & T Mortg. Corp. v. Keesler*, 826 A.2d 877, 879 (Pa. Super. Ct. 2003).

No overriding state policy or matter of substantial public concern is implicated in this case. Indeed, there are no "difficult questions of state law" whereby a federal court will make state policy, and deciding the state claims will not "impair efforts to implement state policy." *Colorado River*, 424 U.S. at 814-15. In this context, the *Burford* exception is not in play. *See id.* at 815.

In addition to the three abstention doctrines just discussed, *Colorado River* abstention covers the circumstance where the presence of concurrent state proceedings may

indicate that a district court should abstain from the "contemporaneous exercise of concurrent jurisdiction[]" due to principles of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Dial Med.*, 33 F.3d at 223 (quoting *Colorado River*, 424 U.S. at 817). This abstention is even more rare than "the three traditional categories," because, among other things, the pendency of proceedings in state court does not normally bar litigation in federal court of the same issues. *Id.* In *Colorado River*, the United States sought a declaration of its water rights in the context of Colorado's water management scheme. 424 U.S. at 805-06. The Supreme Court reasoned that, although typical abstention doctrines would not support dismissal by the District Court, other factors bearing on "wise judicial administration" weighed against concurrent proceedings in federal court, and thus dismissal there was warranted. *Id.* at 817, 819-20. These factors were:

> the congressional policy expressed by the McCarran Amendment[7] and . . . (a) the apparent absence of any proceedings in the District Court, other than the filing of the complaint, prior to the motion to dismiss, (b) the extensive involvement of state water rights occasioned by this suit naming 1,000 defendants, (c) the 300-

---

[7] The McCarran Amendment (also known as the McCarran Water Rights Suit Act) provides, *inter alia*, for the joinder of the United States as a defendant in any suit "for the adjudication of rights to the use of water of a river system or other source." 43 U.S.C. § 666(a).

mile distance between the District Court in Denver and the court in Division 7 [the state water division in question], and (d) the existing participation by the Government in Division 4, 5, and 6 proceedings.

*Id.* at 820. Noting the District Court's "heavy obligation to exercise jurisdiction," the Supreme Court stated that it was not deciding whether "dismissal would be warranted if more extensive proceedings had occurred in the District Court prior to dismissal." *Id.*

In applying these factors to our case, we note that the controversy has taken place almost exclusively in federal court, the state proceeding began after NCM appealed to us and has been stayed pending the outcome of this appeal, and there are none of the complicating factors present in *Colorado River*. Thus, *Colorado River* abstention does not apply either.

## B. The District Court had ancillary jurisdiction

The District Court vacated its order setting aside the sale, reasoning as follows:

> [The motion to set aside the sale] appears merely to be another attempt to address problems with the title created by the plaintiff's actions in prosecuting this case. Such problems with title are an issue of state law, and a federal court has no interest in such issues. As the court previously informed the plaintiff, this case concerns a mortgage foreclosure. Plaintiff obtained the remedy it sought in this case— foreclosure of the mortgage on the property.

12

The court closed the case after providing that remedy. Plaintiff then purchased that property in a marshal's sale. Plaintiff now seeks to have the court determine its rights vis-a-vis another party claiming an interest in the property. That question is an independent question of state law and not properly before the court.

Despite closing the case after providing NCM with the foreclosure sale it sought and before NCM brought its first motion, the District Court's ancillary jurisdiction extended until the completion of the marshal's sale process it ordered to effect the judgment it had granted NCM. As NCM's error giving rise to the dispute took place before the sale process was completed, the Court had jurisdiction over the ensuing controversy.

"Ancillary enforcement jurisdiction is . . . a creature of necessity," *Peacock v. Thomas*, 516 U.S. 349, 359 (1996), giving federal courts the power to enforce their judgments and ensuring that they are not dependent on state courts to enforce their decrees. *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 313 (3d Cir. 2006). Ancillary jurisdiction is a common law doctrine that survived the codification of supplemental jurisdiction in 28 U.S.C. § 1367. *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 363 (4th Cir. 2010) ("§ 1367 governs ancillary jurisdiction over *claims* asserted in a case over which the district court has federal subject matter jurisdiction . . . [but] does not affect common law ancillary jurisdiction over related *proceedings*") (emphases in original) (quotation marks omitted); *see generally Peacock*, 516 U.S. at 354-56 (discussing the availability of ancillary jurisdiction after § 1367 was enacted but declining to extend it based on the facts of that case);

13

*Kokkonen v. Guardian Life. Ins. Co.*, 511 U.S. 375, 379-82 (1994) (same). "[A] district court acquires jurisdiction over a case or controversy in its entirety and, as an incident to the disposition of a dispute that is properly before it, may exercise jurisdiction to decide other matters raised by the case over which it would not have jurisdiction were they independently presented." *Sandlin v. Corp. Interiors, Inc.*, 972 F.2d 1212, 1216 (10th Cir. 1992) (quoting 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1444, at 316-17 (2d ed. 1990)). In other words, a court may exercise jurisdiction over related matters arising out of the case in which it has initial jurisdiction. *Holibaugh*, 609 F.3d at 363 n.2. Here, the dispute over NCM's alleged errors in sending notice of the marshal's sale to interested parties is a matter we can easily say is not only related, but closely related, to the Court's order of the sale. We thus have no doubt it had jurisdiction over the dispute.

Chase is incorrect that the District Court cannot decide this controversy because its ancillary jurisdiction ended when the mortgage foreclosure judgment was entered in favor of NCM. The controversy arose while the District Court had jurisdiction over the marshal's sale, which it had ordered to give effect to the foreclosure remedy it granted NCM.

Chase cites to the doctrine that once a judgment is entered in an action, a court needs separate jurisdictional grounds to hear factually intertwined issues. *See Kokkonen*, 511 U.S. at 380-82 (declining to extend ancillary jurisdiction to an action to enforce terms of a settlement agreement because retaining jurisdiction over the settlement agreement was not in court's order and breach of a separate contract requires a separate jurisdictional basis); *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 141 (3d Cir. 1993) (district court has no

14

power to enforce a settlement agreement where it dismissed the case without retaining jurisdiction). Here, by contrast, NCM is trying to deal with a flaw in the foreclosure sale process caused by its failure to give notice. After overreaching in its attempt to divest Chase of its lien, NCM seeks to wipe the foreclosure sale slate clean and redo that sale correctly. The District Court here specifically ordered the marshal's sale of mortgaged property to recover on the debt due, and it needed to resolve disputes in that process.

In addition, Pennsylvania Rule of Civil Procedure 3132 provides that a court ordering a foreclosure sale may, "[u]pon petition of any party in interest before delivery of the personal property or of the sheriff's deed to real property, . . . upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances." Pa. R. Civ. P. 3132. According to counsel for both parties at oral argument as well as an affidavit from NCM's counsel, the deed has not been delivered to NCM.

The consequences of a ruling affirming the District Court support as well that it is the most appropriate forum to settle this matter. The remedy NCM seeks is the set-aside of the foreclosure sale. This remedy cannot be granted in state court without reversing the District Court's order approving the sale and thus abrogating that Court's disposition of the case. *Cf. Kokkonen*, 511 U.S. at 380 (suggesting ancillary jurisdiction extends to controversies where a federal court's disposition of a case may be "flouted or imperiled"). Moreover, as we surmised and as counsel for Chase confirmed at oral argument, were we to affirm and the set-aside issue later brought before a Pennsylvania state court, Chase would argue that the state court is powerless to set

15

aside a sale ordered by a federal court. Counsel for Chase conceded it would instead argue that the only remedy available to NCM would be an action to quiet title. He also agreed that the question in a quiet title action would be whether the marshal's sale divested Chase of its lien because of NCM's failure to provide Chase notice. Where state courts potentially are prevented from granting a remedy otherwise available to a party, the district court (where the matter started) is the best place to decide these issues, especially where the problem arose during a property sale it ordered. *See, e.g.*, *Colorado River*, 424 U.S. at 819 (rule requiring that jurisdiction be yielded to the court first acquiring control of property avoids the generation of additional litigation and inconsistent dispositions of property).

In an effort to preserve its leverage, Chase argues that we can affirm the denial of the motion for reconsideration and the order vacating the set-aside motion because the clear consequence of failure to give notice to a junior lien holder is that the junior lien is not discharged by the sale and the purchaser takes the property subject to the lien. But this does not address the issue presented here—whether equity calls for putting aside the sale. *See, e.g.*, *First E. Bank, N.A. v. Campstead, Inc.*, 637 A.2d 1364, 1367 (Pa. Super. Ct. 1994) (Olszewski, J., concurring) (agreeing that sale should be set aside upon motion of the party inadequately notified where proper notice was not given and adding that Pennsylvania rules of civil procedure should be interpreted "liberally . . . to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable") (quotation marks omitted). Pennsylvania courts sometimes grant requests to set aside a sale and sometimes do not, depending on the evidence presented by the parties. *Compare*

16

*Gambler v. Huyett*, 679 A.2d 831, 834-36 (Pa. Super. Ct. 1996) (where parties can be returned to the same positions they held prior to the sale, court may set aside the sale where there was a defect in the notice procedure because this cures any prejudice to the party that did not receive the notice), *with Nat'l Penn Bank v. Shaffer*, 672 A.2d 326, 329-330 (Pa. Super. Ct. 1996) (sale does not necessarily have to be vacated if the mistake is the fault of the petitioning party who is a sophisticated financial lender whose counsel made a mistake of law and overbid at the sale, erroneously believing the sale would discharge the senior lender).[8] The record here is too incomplete for us to decide the merits of the motion, and thus we remand for the District Court to oversee the completion of that record and to decide whether a "do-over" is called for. All we decide is that it cannot deny that do-over on, in effect, abstention grounds. *See, e.g.*, *Kelsey-Barber Corp. v. Campbell*, 381 A.2d 938, 943 (Pa. Super. Ct. 1977) (remanding grant of set-aside petition for further "completion

---

[8] The Court in *Shaffer* refused to set aside the sale in part because the parties could not be returned to the position they held at the time of the sale where the identity of a third party bidder at the initial sale was unknown, and the Court did not want to speculate whether this person would bid at a second sale. *Id.* The Court also noted that the parties did not contest the validity of the sale proceedings nor allege "any deficiencies pertaining to . . . notice." *Id.* at 329. Though *Gambler* appears to be more pertinent to the facts in our case, equity calls for full factual findings rather than our speculation. In any event, the burden is on the proponent of the set-aside petition to show that the circumstances warrant relief. *GMAC Mortg. Corp. v. Buchanan*, 929 A.2d 1164, 1167 (Pa. Super. Ct. 2007).

of the record" where there was an inadequate basis for the lower court reaching its conclusion).

* * * * *

What happened here was the filing in federal court of a foreclosure action that traditionally is handled in state court. When matters became sticky before the marshal's sale was complete under state law, the District Court in effect abstained from deciding those contested matters. It should not have done so, for once it had jurisdiction and had acted, it had the duty not to fall back when unanticipated issues relating to the foreclosure sale process arose. We thus vacate and remand for further proceedings in accordance with this opinion.